**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus CORDOVA BARAJAS, aka Jesus
Magana Gudino, Defendant–
Appellant.**

No. 02–10668.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed March 9, 2004.

Nicholas F. Reyes, Fresno, CA, for the defendant-appellant.

Kevin P. Rooney, Assistant United States Attorney, Fresno, CA, for the plaintiff-appellee.

Before: ALARCÓN, BEEZER, and WILLIAM A. FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge:

Jesus Cordova Barajas appeals from the judgment entered following his conviction by a jury for aiding and abetting the cultivation of marijuana in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. He also appeals his 210–month sentence. Mr. Barajas claims that the evidence presented at trial was insufficient to support his conviction. He also asserts that the district court erred in not adjusting his offense level score downward based on his minor role in the offense pursuant to section 3B1.2 of the U.S. Sentencing Guidelines Manual ("USSG"), and in adjusting his offense level score upward two levels for obstruction of justice pursuant to section 3C1.1 of the USSG. We affirm the judgment of conviction because we conclude that the evidence was sufficient to persuade the jury of his guilt. We also find no error in the district court's sentencing decision.

## I

The evidence, viewed in the light most favorable to the prevailing party at trial, reveals that on the morning of September 25, 2001, U.S. Forest Service officers and state officers arrested Mr. Barajas as he emerged from a man-made shelter next to a marijuana farm. The marijuana farm was in an isolated location within the Stanislaus National Forest in central California. To reach the marijuana farm, it was necessary to climb a steep trail approximately a quarter mile from an unpaved Forest Service access road and two miles from a paved street.

The marijuana farm contained more than 1,000 plants. The man-made shelter was covered with tarpaulins, and contained, among other things, a mattress, sleeping bags, and a rifle. Drying marijuana plants were found between two tarpaulins covering the shelter. Attached to Mr. Barajas's belt was a well-worn leather sheath containing a pair of gardening clippers.

Approximately 400 yards up the trail from the shelter was a second site, which was also covered with tarpaulins. It contained various cooking utensils. The officers saw individuals at the second site when they seized Mr. Barajas, but the others fled and were not apprehended. The officers discovered a beer can with

Mr. Barajas's fingerprints at the second site.

U.S. Forest Service Officer Robert Hernandez testified that the marijuana plants were being cultivated in a manner that would enhance the size of the flowering portion of the plant. The flowering portion of a marijuana plant has the highest market value. Officer Hernandez also stated that there was evidence that the marijuana was being harvested for sale because the flowering portion of some of the marijuana plants "had been cut from the plant and was being dried and processed for sales."

The Government charged Mr. Barajas in Count One with "Manufacture/Cultivation of Marijuana and Aiding and Abetting" in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and in Count Two with using or carrying a firearm during and in relation to a drug offense in violation of 18 U.S.C. § 924(c).

On October 8, 2002, a jury trial was held on the charges set forth in the indictment. Mr. Barajas took the stand in his own defense. He testified that he had been led to the location of the marijuana farm the night before his arrest by unknown individuals whom he had met for the first time at a bar that evening. According to Mr. Barajas, these individuals had promised him work picking tomatoes. Mr. Barajas testified that, due to the fact that he had arrived after dark, he had been unaware that he was on a marijuana farm. He had gone straight to the shelter and had not explored the surrounding area. When the officers arrested him, he had just awakened. As to the beer can found at the second site, Mr. Barajas testified, "I had my beer in my hand and I finished it right there. That's the evidence that they have right there. I had taken it there with me. [U]h huh."

Mr. Barajas also stated that he had previously worked as a tomato picker. The prosecutor asked Mr. Barajas to describe the method he used to pick tomatoes during the following colloquy: "Q: You walk through the fields and you pull the tomatoes off the tomato plant; correct? A: Well, of course, that's how you pick by hand. Right? With a bucket and hand and that's how you go picking."

The jury found Mr. Barajas guilty of the first count in the indictment, but acquitted him of the firearm possession charge. At his sentencing hearing, the district court found that Mr. Barajas had obstructed justice by committing perjury during his testimony. For that reason, the court increased his offense level score by two points pursuant to section 3C1.1 of the USSG. The district court rejected Mr. Barajas's request for a downward adjustment for a minor role in the offense under section 3B1.2 of the USSG. Based on an offense level score of 36 and a criminal history category of II, the district court sentenced Mr. Barajas to 210 months of incarceration.

## II

### A

■ Mr. Barajas initially contends that the Government presented insufficient evidence to support his conviction on count one of the indictment. We review claims of insufficient evidence de novo. *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir.2003). In reviewing the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,*

443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In order to prove aiding and abetting a violation of § 841(a)(1), the Government must persuade the trier of fact "that (a) the crime was committed, (b) the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured another person to commit the crime, and (c) the defendant acted before the crime was completed." *United States v. Jackson,* 72 F.3d 1370, 1385 (9th Cir.1995) (internal quotation marks omitted) (quoting *United States v. Castaneda,* 16 F.3d 1504, 1511 (9th Cir.1994)). "It is not necessary for an aider and abetter to know who actually committed the crime." *Id.*

It is undisputed that Mr. Barajas was located on a large marijuana farm containing more than 1000 plants in a remote forest at the end of a steep trail, two-and-a-half miles from a paved road. Mr. Barajas was in a shelter surrounded by harvested marijuana plants. Mr. Barajas was armed with a pair of garden clippers. He did not explain how a beer can with his fingerprint was found at a site, which he testified he had not visited, located 400 yards from where he slept. A rational juror could infer from these facts that contrary to Mr. Barajas's testimony, he had aided and abetted the cultivation of the marijuana and the drying of the harvested plants. It was not unreasonable for the jury to conclude that he had lied in testifying that he had been hired to hand pick tomatoes on this remote mountain area at the end of a steep trail inaccessible to vehicles.

Mr. Barajas alleges, however, that the evidence is insufficient to support his conviction for violation of § 841(a)(1) because there is no evidence of direct cultivation by him, or that he knew that the plants were marijuana. We are mindful that we have previously reversed convictions based on insufficient circumstantial evidence to prove a defendant's connection to a conspiracy. *e.g., United States v. Bautista–Avila,* 6 F.3d 1360, 1363 (9th Cir. 1993) (holding that the circumstantial evidence produced by the Government was insufficient to connect the defendant to the alleged conspiracy other than as a person "tangentially involved in a drug conspiracy"); *United States v. Lopez,* 625 F.2d 889, 895–97 (9th Cir.1980) (holding that "[t]here is no evidence ... that [the defendant] had any knowledge of [the conspirators'] activities"); *see also United States v. Delgado,* 357 F.3d 1061 (9th Cir.2004) (discussing and distinguishing cases where the evidence was "far weaker than that presented against [appellant] Delgado"). We also recognize, however, that circumstantial evidence alone can be sufficient to demonstrate a defendant's guilt. *See United States v. Yoshida,* 303 F.3d 1145, 1151 (9th Cir.2002) ("[C]ircumstantial evidence can form a sufficient basis for conviction."); *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992) ("[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.").

Here, there was direct evidence that Mr. Barajas was observed by Forest Service officers, at approximately 7:45 a.m., on a marijuana farm located in a remote portion of a National Forest, at the top of a steep hill, outside a "man-made structure" containing drying marijuana plants, with a garden tool in his possession capable of being used to cultivate or harvest marijuana. Moreover, in addition to the direct and circumstantial evidence showing that Mr. Barajas aided and abetted the cultivation of marijuana, the jury was presented with Mr. Barajas's own testimony. The jury was free to disbelieve Mr. Barajas and infer the opposite of his testimony to support its verdict. *See United States v. Scholl,* 166 F.3d 964, 979 (9th Cir.1999) (holding that the jury's dis-

belief of the defendant's testimony furnished a partial basis for supporting its guilty verdict); *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir.1981) ("When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth."). Thus, a rational juror could infer, based on the observations of the arresting officers, the inferences that can be drawn from the totality of the circumstances, and Mr. Barajas's implausible testimony, that Mr. Barajas aided and abetted in cultivating marijuana, and that he did so knowingly and intentionally.

■ Mr. Barajas further suggests that he could not be convicted for violating § 841(a)(1) since the jury acquitted him of the firearm possession charge under § 924(c). The jury's finding that Mr. Barajas aided and abetted the cultivation of marijuana, but did not possess a firearm in doing so, is not inherently inconsistent. In addition to the commission of a drug offense, § 924(c) requires two separate elements: (1) the carrying or use of a firearm, and (2) that such use is in relation to the drug offense. *United States v. Mendoza*, 11 F.3d 126, 128–29 (9th Cir.1993); *United States v. Martinez*, 967 F.2d 1343, 1346 (9th Cir.1992). The jury could rationally have found, absent Mr. Barajas's fingerprints, that it had a reasonable doubt that he had used a firearm during the time he had aided and abetted the cultivation of marijuana.

**B**

■ Mr. Barajas next attacks the district court's refusal to adjust his sentence downward based on his alleged minor role in the offense pursuant to section 3B1.2 of the USSG.[1] "The district court's determination that the defendant was not a minor participant in the offense is a factual determination that we review for clear error." *United States v. Pena–Gutierrez*, 222 F.3d 1080, 1091 (9th Cir.2000) (citing *United States v. Duran*, 189 F.3d 1071, 1088 (9th Cir.1999)).

■ A downward adjustment based on minimal or minor role in the offense pursuant to section 3B1.2 is applicable only in exceptional circumstances. *Pena–Gutierrez*, 222 F.3d at 1091. Furthermore, "[t]he defendant has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense." *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir.1998).

Mr. Barajas contends that the district court should have adjusted his criminal offense level score downward pursuant to section 3B1.2 since the Government presented no evidence showing that Mr. Barajas had played a significant role in the offense. Mr. Barajas is mistaken regarding the party that has the burden of proof and persuasion concerning downward adjustments. It was his burden to persuade the sentencing judge by a preponderance of the evidence that he played a minor role in the offense. *Id.* at 1348. Mr. Barajas presented no evidence that his role in the cultivation of the marijuana plants was minor. Instead, he testified that he had .no role at all in the offense—he was mere-

---

1. Section 3B1.2 states:
   Based on the defendant's role in the offense, decrease the offense level as follows:
   (a) If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

   (b) If the defendant was a minor participant in any criminal activity, decrease by **2** levels.
   In cases falling between (a) and (b), decrease by **3** levels.

ly a gullible tomato picker who found himself in the wrong place, at the wrong time. The district court did not clearly err in finding that the evidence did not demonstrate that Mr. Barajas had a minor role in the offense.

## C

■ Finally, Mr. Barajas claims that the district court erred in adjusting his sentence upward two levels pursuant to section 3C1.1 of the USSG.[2] We review "[a] district court's factual determinations under Section 3C1.1 ... for clear error, and a district court's characterization of a defendant's conduct as obstruction [of justice] within the meaning of Section 3C1.1 ... de novo." *United States v. Shetty*, 130 F.3d 1324, 1333 (9th Cir.1997) (citing *United States v. Ford*, 989 F.2d 347, 351 (9th Cir.1993)). Section 3C1.1 mandates that a district court increase a defendant's offense level score by two levels upon finding that the defendant committed perjury. *See* U.S. Sentencing Guidelines Manual § 3C1.1, cmt. n. 4(b) (stating that "committing, suborning, or attempting to suborn perjury" is one type of conduct to which the enhancement applies); *United States v. Ancheta*, 38 F.3d 1114, 1118 (9th Cir. 1994) ("[T]he two-level enhancement is mandatory, not discretionary, once a district court determines that a defendant has obstructed justice.").

■ Mr. Barajas argues that the evidence is insufficient to support the district court's finding that he obstructed justice under section 3C1.1. In order to find that Mr. Barajas committed perjury, the record must show that he has provided "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The Supreme Court has commented that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* at 95, 113 S.Ct. 1111. Such express findings, however, are not required. *Id.* It is sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

Here, the district court found, given the fact that Mr. Barajas had lived in the area for more than twenty years and had worked as a tomato picker in the past, that his testimony that he followed strangers into a remote area of the foothills in the later part of the year merely to pick tomatoes was "almost outrageous." The district court further found that it was implausible that Mr. Barajas possessed a can of beer at the bar, maintained possession of it during his journey into the foothills, and that the can somehow ended up at the second site, 400 yards away. Judge Ishii stated, "I could not help as I heard this defendant's testimony during the course of the trial that it was so patently false, that it was almost an insult to the jury and to the Court."

The district court explicitly found that "[a]ll of the factors in the *Dunnigan* case have clearly been met in this case. And it is my factual finding in this case that defendant in this case clearly presented testimony that was false[,] material[,] and

2. Section 3C1.1. states:
If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of con-

viction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

willful." Because the district court's finding that the *Dunnigan* elements were met "is plausible in light of the record viewed in its entirety," we hold that the district court did not clearly err in adjusting Mr. Barajas's sentence upward two levels pursuant to section 3C1.1. *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**AFFIRMED.**