**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ALPHONSO KINZAR CARTY,
        *Defendant-Appellant.*

No. 05-10200

D.C. No.
CR-03-01135-RGS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roger G. Strand, District Judge, Presiding

Argued and Submitted
April 7, 2006—San Francisco, California

Filed July 17, 2006

Before: Robert R. Beezer and Raymond C. Fisher,
Circuit Judges, and Robert J. Timlin,* Senior District Judge.

Opinion by Judge Beezer

---

*The Honorable Robert J. Timlin, Senior District Judge for the United
States District Court for the Central District of California, sitting by desig-
nation.

## COUNSEL

Milagros A. Cisneros, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Dyanne C. Greer, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

BEEZER, Circuit Judge:

Alphonso Kinzar Carty was charged with seven counts of sexual abuse stemming from a series of incidents involving his minor niece. Carty was convicted and sentenced to 235 months of custody and a lifetime of supervision. On appeal, Carty challenges the conviction on the ground that the evidence is insufficient and the sentence on the ground that it was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005).

We have jurisdiction, affirm the conviction and remand for resentencing.

I

The charges against Carty, an enrolled member of the Navajo Nation, resulted from a series of incidents that occurred between Carty and his minor niece. The first incident occurred in 2000 when the victim was fourteen and staying the night with her uncle while her parents were out of town visiting her sick grandfather. The victim testified that Carty entered the room where she was sleeping and touched her upper and lower body under her clothes.

The second incident occurred during the same stay, when Carty drove the victim, who is diabetic, to her home to get insulin. The victim testified that while they stood outside her house Carty put his hand down her pants and his finger in her vagina.

The third incident occurred in 2003 when the victim was sixteen. The victim testified that she stayed the night in Carty's trailer after he picked her up from a track meet. She stated that during the night he came into the bedroom where she slept and molested her, by touching and kissing her vagi-

nal area, putting his finger in her vagina and touching and kissing her breasts.

The fourth incident occurred later the same year when the victim was at Carty's trailer babysitting his children. According to her testimony, when she entered Carty's bedroom to check on Carty's young son, Carty grabbed her around the waist, put his hand down her underwear and his finger in her vagina. She also testified that Carty kissed her on the lips and told her that he loved her. Later that same day, the victim stated that while she was kneeling by the bathtub giving Carty's son a bath, Carty entered the bathroom, came behind her and touched her breasts.

Following this last incident, the victim reported the abuse to a representative of her church while at a youth conference. The police were contacted and the victim was initially interviewed in August 2003. The victim underwent a physical exam by a pediatric nurse practitioner; the results of the exam were normal, which the nurse testified is consistent with the type of abuse alleged in this case. Special Agent Sherry Rice of the FBI prepared a report based on that interview, and, together with another agent, interviewed Carty eight days later. Carty attended this interview by choice and was explicitly told he was not under arrest. The interview lasted four hours and at the conclusion of the interview Carty wrote out a statement in which he admitted to sexually abusing the victim.

A jury trial was conducted in August 2004. Carty moved to suppress his statement, but the district court rejected this motion and found that the statement was not "the product of coercion . . . or other unlawful action or conduct on the part of law enforcement." At the close of evidence, Carty moved for a Judgment of Acquittal, which the district court denied. The Government requested a question be added to the verdict forms asking the jury to determine whether, at the time of the incidents, Carty had "care and custody" over the victim. The

district court added the question over Carty's objection that the "issue should have been presented to the Grand Jury."

The jury convicted Carty of two counts of abusive sexual contact in violation of 18 U.S.C. § 1153, 2244(a)(1) and 2246(3), one count of aggravated sexual abuse of a minor in violation of §§ 1153, 2241(c) and 2246(2)(C), one count of sexual abuse of a minor in violation of §§ 1153, 2243(a) and 2246(2)(C), two counts of aggravated sexual abuse in violation of §§ 1153, 2241(a) and 2246(2)(C), and one count of aggravated sexual abuse in violation of §§ 1153, 2241(a) and 2246(2)(B). With respect to each count, the jury found that Carty had "care and custody" over the victim at the time of the offenses.

Carty filed a Renewed Motion for Judgment of Acquittal on the grounds that the evidence was insufficient to find him guilty and that the evidence was insufficient to find he had "care and custody" over the victim during the incident that occurred while she was babysitting his children. The district court granted the motion with respect to whether Carty had care and custody over the victim during the incident while babysitting and denied the motion in all other respects. A pre-sentence report ("PSR") was prepared and calculated a Guideline range of 235-293 months. After examining the PSR, Carty's objections to the PSR, Carty's sentencing memorandum, the Government's response, and hearing testimony at sentencing from Carty and various members of his family, the district court imposed a sentence of 235 months in custody and lifetime supervision with various conditions. Carty timely appeals.

II

**[1]** Carty first argues that the evidence is insufficient to support the jury's verdicts. "Claims of insufficient evidence are reviewed de novo where, as here, a motion for acquittal is made at the close of evidence." *United States v. Naghani*,

361 F.3d 1255, 1261 (9th Cir. 2004). "There is sufficient evidence to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *United States v. Carranza*, 289 F.3d 634, 641-42 (9th Cir. 2002)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Carty argues no rational juror could have concluded that the Government proved its case beyond a reasonable doubt and supports his argument by pointing out aspects of the victim's testimony that he claims are inconsistent or unbelievable. For example, Carty argues the victim's testimony describing the incidents that occurred while spending the night at Carty's trailer are incredible because of her testimony that on both occasions she was sharing the bed with her cousin. Carty argues the victim's testimony as to the second incident is unbelievable because she claims it occurred out in the open in front of her house; similarly he argues the victim's story as to the fourth incident is suspect because the abuse allegedly occurred with the door open, while many children were running through the trailer and while the victim's brother was in the next room.

**[2]** Carty presented each of these arguments to the jury through his cross-examination of the victim. In fact, most of these alleged inconsistencies and undermining facts were elicited through cross-examination. By returning guilty verdicts, the jury indicated it found the victim's testimony credible despite Carty's arguments to the contrary. "[W]hen a jury is informed of the possible challenges to a witness' credibility and nevertheless believes the witness, the reviewing court should not upset the jury's credibility determination." *United States v. Leung*, 35 F.3d 1402, 1405 (9th Cir. 1994).

Carty also argues the evidence is insufficient to sustain his conviction because he presented evidence that his statement was made under stressful circumstances and that Agent Rice

told him what to write. The district court rejected Carty's pre-trial suppression motion and found the statement was not the result of coercion or "other unlawful action or conduct on the part of law enforcement." Carty does not appeal that finding. As with the victim's testimony, the jury is free to believe or disbelieve the statements made by the defendant. *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004). The defense argued that the statement was unreliable through its direct examination of Carty and cross-examination of Agent Rice, as well as during its closing. A rational juror could have accepted Carty's confession and dismissed the excuses later offered at trial.

**[3]** Both the victim's testimony and Carty's statement were "not incredible or unsubstantial on [their] face[.]" *United States v. Alvarez*, 358 F.3d 1194, 1202 (9th Cir. 2004). "[T]he credibility of witnesses is a question for the jury unreviewable on appeal." *United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir. 1999). We determine the evidence offered at trial was sufficient to sustain the verdicts.

## III

Carty argues the inclusion of the "care and custody" question on the verdict forms was a violation under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We review an alleged *Apprendi* violation de novo. *United States v. Maria-Gonzales*, 268 F.3d 664, 667 (9th Cir. 2001). A district court's formulation of jury instructions is reviewed for abuse of discretion. *United States v. Shipsey*, 363 F.3d 962, 966 n.3 (9th Cir. 2004).

**[4]** In *Apprendi*, the Supreme Court held that any fact (other than a prior conviction) that increases the penalty for a crime beyond the statutory maximum must either be admitted by a defendant or submitted to a jury and found beyond a reasonable doubt. 530 U.S. at 490. Anticipating the application of *Apprendi* to the federal Sentencing Guidelines, the

Government requested that a question regarding whether Carty had "care and custody" over the victim be included on the verdict forms. On appeal, Carty argues the inclusion of the "care and custody" question on the verdict forms violates *Apprendi* because the jury was not instructed that it must find care and custody beyond a reasonable doubt.

**[5]** In *United States v. Booker*, 543 U.S. 220, 259 (2005), the Supreme Court applied *Apprendi* to the federal Sentencing Guidelines, but remedied the constitutional infirmity by severing the provision that made the Guidelines mandatory. The district court sentenced Carty after *Booker*. The district court's failure to make explicit the standard by which the jury had to find Carty had care and custody over the victim, if it was error at the time, now amounts to harmless error because it is not necessary for the jury to make such a finding in an advisory regime. *See Booker*, 543 U.S. at 259 ("[W]ithout [the provision making the guidelines mandatory] the statute falls outside the scope of *Apprendi*'s requirement."). The district court was free to make the sentence-enhancing finding on its own when calculating the appropriate guideline range. *See United States v. Ameline*, 409 F.3d 1073, 1089 (9th Cir. 2005) (en banc) ("The district court's factual findings will determine the base offense level . . . .").

**[6]** Nor did the inclusion of the "care and custody" question convert the issue into an element of the offense. With respect to all seven counts, the verdict forms clearly separate the guilt inquiry from the care and custody inquiry. The forms first read "We the jury, find the defendant . . ." followed by the word "GUILTY" and a blank line for the jury to indicate whether it so found. Below this line, the forms read "Having found the defendant guilty" and then pose the care and custody question. When the district court reviewed the form with the jury it highlighted that the care and custody question was to be answered only after there was a finding of guilt. The district court explained, "*If there is a guilty verdict*, then the form of verdict goes on to provide that *having found the*

*defendant guilty* [the jury should decide the care and custody question]" (emphasis added). The district court did not abuse its discretion in formulating the jury form.

## IV

Carty finally argues that the district court treated the Guidelines as mandatory and failed to consider adequately the factors of 18 U.S.C. § 3553(a). Carty's challenge amounts to a claim that his sentence is unreasonable under *United States v. Booker*. *See* 543 U.S. at 261. Post-*Booker*, we have jurisdiction to review sentences imposed within the Guideline range. *United States v. Plouffe*, 445 F.3d 1126, 1128 (9th Cir. 2006).

[7] District courts have discretion in determining sentences according to the provisions of § 3553(a). *Booker*, 543 U.S. at 259-60. Section 3553(a)(2) states that a district court should impose a sentence

> sufficient, but not greater than necessary . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . training, medical care, or other correctional treatment . . . .

Section 3553(a) further provides that the district court should weigh factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the [applicable] sentencing range[;]" the articulated policy goals of the guidelines; "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." § 3553(a)(1), (3)-(7).

[8] We have not yet specifically addressed the extent to which a district court is required to make evident its consider-

ation of the § 3553(a) factors in sentencing. We have echoed our sister circuits by acknowledging that *Booker*'s requirement that a district court take the factors of § 3553(a) into account "does not necessitate a specific articulation of each factor separately[.]" *United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006); *see also United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) ("[T]he sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant."); *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005) ("[N]othing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.").

**[9]** In the same breath, however, we have stated that *Booker* requires "a showing that the district court considered the statutorily-designated factors in imposing a sentence." *Knows His Gun*, 438 F.3d at 918. In *United States v. Diaz-Argueta*, 447 F.3d 1167, 1171 (9th Cir. 2006), we held that the district court did not make a sufficient showing when it failed to address any of the § 3553(a) factors other than the Guideline range when it imposed a sentence within the range. In *Diaz-Argueta*, the district court stated that it had "carefully considered" the PSR, counsel comments, and a memorandum from the defendant. *Id*. The district court then imposed a sentence within the properly calculated Guideline range, providing no discussion of the applicability of the other § 3553(a) factors or rationale for the sentence. *Id*. We vacated the sentence and held that the mandatory terms of § 3553(a) are not met "by reciting a number taken from a table of the Sentencing Guidelines that are now merely advisory. There is no presumption that such a number has taken into account all of the relevant circumstances that the statute states that the court 'shall consider.' " *Id*.

**[10]** We have also emphasized that it is important for a district court to provide a rationale when it imposes a sentence outside the Guideline range. In addressing the government's challenge that an imposed sentence was unreasonable under *Booker* because it was drastically lower than the calculated Guideline range, we stated the district court "is 'required to articulate the reasons for the extent of the departure in sufficiently specific language to allow appellate review.' " *United States v. Menyweather*, 447 F.3d 625, 635 (9th Cir. 2006) (quoting *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc)). Similarly, in reviewing a district court's decision to impose a sentence above that calculated under the Guidelines, we stated that for review purposes it is imperative that a district court "clearly and carefully differentiate between the findings and conclusions" relevant to the range calculation under the Guidelines and "findings and conclusions as regards the application of non-Guidelines factors pursuant to 18 U.S.C. § 3553(a)." *United States v. Mix*, 450 F.3d 375, 382 (9th Cir. 2006).

**[11]** In *Booker*, the Supreme Court stated that the Guidelines would no longer apply in a mandatory fashion and that district courts should be guided by the § 3553(a) factors when sentencing. 543 U.S. at 261. On review, we must determine that the district court did not apply the Guidelines in a mandatory fashion, that it considered the § 3553(a) factors, and that the resulting sentence is reasonable. When a district court simply adopts a sentence suggested by the Guidelines, makes no reference to the § 3553(a) factors, and provides no discussion of its rationale for the sentence imposed, we are unable to fulfill our duty under *Booker*. As the Third Circuit has recognized, an appellate court cannot review a district court's exercise of discretion if the district court does not articulate the reasoning underlying its decision. *See United States v. Johnson*, 388 F.3d 96, 101 (3d Cir. 2004). Thus, in *United States v. Cooper*, in reviewing a within-the-Guidelines sentence for reasonableness, the Third Circuit held that "the record should demonstrate that the court considered the

§ 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." 437 F.3d 324, 332 (3d Cir. 2006).

In imposing the sentence, the district court stated that it had considered the materials placed before it. These materials (the PSR, Carty's objections to the PSR, Carty's sentencing memorandum and the Government's response to the memorandum), as well as the presentation made by the defense at the sentencing hearing, all discussed the § 3553(a) factors. The district court, however, did not comment substantively on any of these submissions in rendering its sentence. It did not discuss any of the goals and factors enumerated in § 3553(a) or how they might have impacted its determination with respect to Carty. Rather, the district court simply adopted the PSR and imposed a sentence at the bottom of the Guideline range.

**[12]** By stating it considered the materials before it and sentencing within the Guidelines, the district court demonstrated that it had considered at least one of the § 3553(a) factors: namely, § 3553(a)(4) which requires the district court take into account the applicable Sentencing Guideline range. Doing so did not show, however, that "the court considered the other standards reflected in that section," *Cooper*, 437 F.3d at 330, and thus provides an insufficient basis for us to conduct the reasonableness review entrusted to us by *Booker*.

**[13]** Although several circuits have afforded a presumption of reasonableness to within-the-Guidelines sentences, *see, e.g., United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005); *United States v. Lincoln*, 413 F.3d 716, 717-18 (8th Cir. 2005), we have not adopted this position. We offer no opinion whether the district court's within-the-Guideline sentence here was, in fact, reasonable. We hold only that post-*Booker*, when imposing a sentence, a district court must provide on the record some articulation of its consideration of the § 3553(a) factors and explanation of the reasons underlying

its sentence selection. Because the district court did not create such a record, we remand for resentencing.

## V

The testimony presented by the victim at trial was sufficient to sustain the jury's verdicts and we affirm the defendant's conviction. Any error the district court may have committed in failing to require the jury find beyond a reasonable doubt that the Defendant had care and custody over the victim is harmless, because the Defendant was sentenced post-*Booker* under an advisory regime and the court was free to make this determination for itself. Because the district court failed to create a record memorializing its consideration of the sentencing factors listed in § 3553(a) and explaining its sentence selection, however, we remand for resentencing.

AFFIRMED in part and REMANDED for resentencing.