# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

ANTONIO FELICIANO CRAWFORD, aka
Tone; aka T; aka Tom,
      *Defendant-Appellant.*

No. 06-30205

D.C. No.
CR-02-00272-WFN

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior Judge, Presiding

Submitted March 14, 2008*
Seattle, Washington

Filed March 28, 2008

Before: Betty B. Fletcher, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Kathleen Moran, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

George J.C. Jacobs, III, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**OPINION**

McKEOWN, Circuit Judge:

Antonio Feliciano Crawford raises a number of sentencing issues that have now been answered by the spate of recent

sentencing decisions by the Supreme Court and this court. We affirm his 210-month sentence for distribution of heroin and crack cocaine.

## FACTUAL AND PROCEDURAL BACKGROUND

Crawford was convicted by a jury of two counts of distribution of heroin and distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 210 months' imprisonment, six years of supervised release, a $1,000 fine and a $100 special penalty assessment. The district court found that he was a "career offender" under United States Sentencing Guidelines § 4B1.1. The court calculated Crawford's original offense level as 34 and applied a two-level reduction for acceptance of responsibility. The sentence was at the bottom of the applicable Guidelines range of 210 to 262 months.

Crawford's conviction was affirmed on direct appeal in June 2004. *See United States v. Crawford*, 102 Fed. Appx. 91 (9th Cir. June 22, 2004) (unpublished). Several weeks later, and before our mandate issued, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), which held that in the context of mandatory state sentencing guidelines, the Sixth Amendment right to a jury trial prohibited judges from enhancing criminal sentences based on facts other than those decided by the jury or admitted by the defendant. After *Blakely*, Crawford asked us to recall our previous mandate. While this motion was pending, the Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. 220 (2005), where it held, among other things, that the Sentencing Guidelines were merely advisory, not mandatory, and that appellate courts should review sentences for "reasonableness." In August 2005, we vacated Crawford's sentence and remanded his case for re-sentencing in light of *Booker* and pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). *See United States v. Crawford*, 422 F.3d 1145 (9th Cir. 2005) (order).

New counsel was appointed for Crawford and the parties re-briefed the sentencing issues. The district court held another sentencing hearing and imposed the same sentence as before. Crawford appealed his re-sentencing, but his case and others were deferred pending resolution of *United States v. Carty*, 462 F.3d 1066 (9th Cir. 2006) (order),[1] which itself was deferred until after the Supreme Court decided several sentencing cases, among them *Rita v. United States*, 551 U.S. ___, 127 S. Ct. 2456, 2465 (2007) (holding that appellate courts may presume the reasonableness of within-Guidelines sentences), and *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 591 (2007) (holding that appellate courts must review all sentences, within and without the Guidelines range, under a deferential abuse-of-discretion standard). On the same day it decided *Gall*, the Court held in *Kimbrough v. United States* that the Guidelines for crack cocaine, like all others under *Booker*, are advisory only, and "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder [cocaine] disparity yields a sentence 'greater than necessary' to achieve [18 U.S.C.] § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558, 575 (2007). Crawford's sentence was within the Guidelines, and so we can now decide his appeal based on *Rita* and *United States v. Carty*, ___ F.3d ___ , Nos. 05-10200, 05-30120 (9th Cir. filed March 24, 2008) (en banc) (declining to adopt a "presumption" of reasonableness for within-Guidelines sentences, but recognizing that a correctly calculated Guidelines sentence "will usually be reasonable").

## Analysis

Crawford raises three issues on appeal: (1) whether the Sentencing Commission's policy statements should be given

---

[1] *United States v. Carty*, 453 F.3d 1214 (9th Cir. 2006), and *United States v. Zavala*, 443 F.3d 1165 (9th Cir. 2006) (per curiam), were consolidated for purposes of rehearing en banc.

more weight than the Guidelines for crack cocaine sentences because the Commission's reports are supported by empirical evidence, while the Guidelines were based on unproven assumptions; (2) whether the district court procedurally erred in offering comments concerning the view that the Guidelines are presumptively reasonable and whether it failed to consider the sentencing factors set forth in 18 U.S.C. § 3553(a); and (3) whether the district court erred in finding that Crawford was a career offender. We deal with each issue in turn.

## A.    SENTENCING DISPARITY BETWEEN CRACK AND POWDER COCAINE

[1] Crawford argues that the reports by the Sentencing Commission are supported by empirical research, while the Guidelines are based on speculations that "ha[ve] never held up to objective scrutiny," and consequently, a district court should give more weight to the Commission's reports and less weight to the Guidelines. Although the Supreme Court has since validated Crawford's view, *see Kimbrough*, ___ U.S. ___, 128 S. Ct. at 575 ("In formulating Guidelines ranges for crack cocaine offenses, . . . the Commission . . . did not take account of 'empirical data and national experience.' Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions . . . for crack cocaine offenses . . . ." (citations omitted)), *Kimbrough* does not help Crawford's case because he conceded during his re-sentencing hearing that the disparity does not actually affect his sentencing level. The judge asked during the hearing, "[a]ssuming the court is correct that [Crawford] qualifies as a career offender, if the conviction had been for powder instead of crack, wouldn't we be in the same place?," to which Crawford's counsel responded by acknowledging that the base offense level calculation would be the same regardless of the powder cocaine versus crack cocaine distinction. Thus *Kimbrough* is unavailing to Crawford's cause.

**B.  REASONABLENESS OF SENTENCE AND APPLICATION OF § 3553(a) FACTORS**

### 1.  Post-*Rita* and *Carty* reasonableness analysis

[2] Crawford argues that the district court erred in imposing a sentence within the Guidelines after declaring its view that such sentences are presumptively reasonable. Though the Supreme Court in *Rita* held that appellate courts *may* presume that a sentence is reasonable when a district court judge's discretionary decision accords with the sentence the Sentencing Commission deems appropriate in most cases, the Court emphasized that such a presumption was limited to the standard on appeal. *See Rita*, 551 U.S. at ___, 127 S. Ct. at 2465 ("We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate 'reasonableness' review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review." (emphasis in original) (citing *Booker*, 543 U.S. at 259-60)); *Gall*, ___ U.S. at ___, 128 S. Ct. at 596-97; *Carty*, ___ F.3d at ___ (the district court may not presume that the Guidelines range is reasonable).

[3] The district court here did not presume the reasonableness of a Guidelines sentence with respect to Crawford's case but, rather, presciently forecasted *Rita*'s holding, while citing to *Booker* and acknowledging other circuits that had already adopted the rule *Rita* would eventually espouse:

> [W]e all recognize that now, the sentencing guidelines are advisory. They're not mandated. We are required to consult them, calculate—the career offender provision under Chapter 4 of the guidelines is advisory. . . . But as I've said before and I'll say now, in view of the *Booker*/*Fan Fan* cases, which require us to look at the guidelines, consult them, calculate the appropriate guideline sentence, that the standard of review on appeal is reasonable if the

> court feels that—and some of the circuits have said —specifically held that a guideline sentence, unless there's some real reason to vary from it, is presumptively reasonable; and I think that that makes sense.

This statement must be viewed in the context of the entire sentencing hearing. We must distinguish the district court's comment on some circuits' adoption of the presumption for appellate review, a statement made in passing, from the thorough process the court went through in determining the appropriateness of Crawford's sentence, which was done within the framework established by *Booker* and reinforced by *Rita*, *Gall*, and *Kimbrough*. *See Kimbrough*, ___ U.S. at ___, 128 S. Ct. at 574 (the Guidelines are "the 'starting point and the initial benchmark' " (quoting *Gall*, ___ U.S. at ___, 128 S. Ct. at 596)); *Gall*, ___ U.S. at ___, 128 S. Ct. at 596-97 n.6 (the Guidelines are to be kept in mind throughout the process); *Carty*, ___ F.3d at ___ (all sentencing proceedings are to begin by determining the applicable Guidelines range, which must be calculated correctly, and the Guidelines should be kept in mind throughout the process). The district court neither misapprehended the sentencing framework nor adopted a presumption of reasonableness.

### 2. Application of § 3553(a) factors

[4] To comply with the requirements of *Booker*, a district court must sufficiently consider the Guidelines, as well as the other factors listed in § 3553(a). The district court here more than met *Booker*'s requirements. The sentencing colloquy and explanation were detailed and thoughtful. The district court then properly applied the § 3553(a) factors alongside the Guidelines, noting that it must look "not only [at] the recommendations contained in the advisory guidelines, but . . . at the whole picture. And the criteria that we do look at are set forth in 18 USC 3553(a)."

[5] The judge first analyzed § 3553(a)(3) ("kinds of sentences available") and § 3553(a)(4)(A) ("kinds of sentence

and the sentencing range established for—the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines") and discussed how, in previously considering Crawford's sentence, he had felt that a potential maximum life sentence was too high and had adjusted it accordingly, taking into account Crawford's acceptance of responsibility. The judge then considered § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant") and found drug trafficking to be "probably one of the most serious crimes that confronts society at this time," commenting that there was "good reason to believe" that Crawford had been affiliated with gangs and may even have been a participant in a drive-by shooting. Considering § 3553(a)(2)(A) and § 3553(a)(2)(C) ("the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to protect the public from further crimes of the defendant"), the judge also reflected on the need for the sentence imposed as promoting "[r]espect for the law," and protecting the public, observing the necessary reliance of the distribution schemes of "high-level dealers" on "street dealers," such as Crawford.

[6] With regard to § 3553(a)(2)(B) (the need for the sentence "to afford adequate deterrence to criminal conduct"), the court observed that Congress has created harsh penalties in order to deter such activity because of its ruinous effects on individuals and communities. Finally, with respect to § 3553(a)(2)(D) ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"), the court then took into account the need for rehabilitation, remarking to Crawford that he was "encouraged" that Crawford felt he was changing his life, and that he hoped Crawford would continue "to act appropriately while . . . incarcerated, earn maximum good time, and participate in the 500-hour drug treatment program" once eligible to do so.

After reviewing these factors, the judge concluded,

> in view of all the factors taken into account—your
> criminal history background, your long use and sell-
> ing of drugs—and I emphasize long period of time
> selling drugs here in this community—your associa-
> tions and your other activities—they all indicate that
> a reasonable sentence, taking into account not only
> the advisory guidelines of 3553, is the sentence that
> was imposed; and that's the 210 months. And I'm
> not going to change anything.

In light of the advisory Guidelines and the relevant sentencing
factors in § 3553, the district court committed no error in its
thorough and sympathetic consideration of Crawford's case.

## C.  CALCULATION OF CAREER OFFENDER STATUS

The final issue Crawford raises is whether the district court
correctly found that he qualifies as a career offender based on
his two prior drug offense convictions in California and
Washington. With respect to the California conviction, Craw-
ford challenges the sufficiency of the documentation. With
respect to the Washington conviction, he challenges the cate-
gorization of the offense. We review *de novo* the district
court's interpretation of the Sentencing Guidelines and its
determination that a defendant qualifies as a career offender.
*United States v. Shumate*, 329 F.3d 1026, 1028 (9th Cir.
2003). The district court was correct in its determination that
Crawford qualifies as a career offender under U.S.S.G.
§ 4B1.1.

### 1.  California Conviction

**[7]** In 1990, Crawford pled guilty to violating California
Health and Safety Code § 11352(a), which provides: "[E]very
person who transports, imports into this state, sells, furnishes,
administers, or give[s] away . . . any controlled substance

specified in [the statute] . . . shall be punished by imprisonment in the state prison for three, four, or five years." To document the conviction, the government provided the felony complaint charging the § 11352(a) violation, the information, the plea form, the abstract of judgment, and the state court's minute orders entering a judgment of conviction. On the plea form, Crawford provided a hand-written factual basis for his plea, which stated: "On 6/21/90 in Orange County I sold a useable quantity of cocaine, knowing it was cocaine. On 7/13/90 in Orange County, I transported cocaine knowing it was cocaine. The quantity on 6/21/90 was 14.45 gms. The quantity on 7/13/90 was 180 grams." He signed and dated the form.

**[8]** In analyzing whether a prior conviction qualifies as a prior predicate controlled substance offense for purposes of U.S.S.G. § 4B1.1, the sentencing court must first use the categorical approach. *United States v. Kovac*, 367 F.3d 1116, 1119 (9th Cir. 2004) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). Under this approach, the sentencing court must look only to the statute of conviction. *Id.* If the statute is facially over-inclusive, the court employs the modified categorical approach. *Id.* The government concedes that the California statute is too broad to qualify under the categorical approach because the Health and Safety Code covers such a wide range of possible behavior. *See id.* at 1119-20 (applying modified categorical approach to question of whether Cal. Health and Safety Code § 11352 violation qualifies as a career-offender predicate offense).

Under the modified categorical approach, the prior offense may qualify as a career offender predicate offense if " 'documentation or judicially noticeable facts . . . clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc) (quoting *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc), *superseded by statute on other grounds as noted in United States v. Vidal*, 426 F.3d 1011, 1014-15 (9th Cir. 2005). "The

government has the burden to establish clearly and unequivocally that the conviction was based on all of the elements of a qualifying predicate offense." *Kovac*, 367 F.3d at 1119. Where the prior conviction was based on a guilty plea, the sentencing court's review is limited "to those documents 'made or used in adjudicating guilt' such as 'the terms of the charging document, the terms of a plea agreement or [the] transcript of [the] colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.' " *United States v. Martinez-Martinez*, 468 F.3d 604, 606-07 (9th Cir. 2006) (alterations in original) (quoting *Shepard v. United States*, 544 U.S. 13, 20, 26, (2005)); *see also United States v. Narvaez-Gomez*, 489 F.3d 970, 977 (9th Cir. 2007).

The district court concluded that the 1990 California conviction meets the requirements for the career offender enhancement under the modified categorical approach. Crawford argues that the documentation was insufficient to establish the elements of the California offense because certain parts of the plea documents were illegible, because the government relied on the abstract of judgment, and because the plea agreement itself was not signed by a judge. The district court considered and rejected each of these arguments. None of the arguments is persuasive on appeal.

[9] The 1990 California conviction meets the requirements for the modified categorical approach. In his plea, Crawford clearly admitted that he knowingly sold and transported cocaine. Selling cocaine falls within the definition of a controlled substance offense, even though the statutory definition of the California offense is broader. U.S.S.G. § 4B1.2(b). Crawford does not contest either the accuracy of the plea form or his statement contained on the form. The district court found that the plea form was signed by Crawford, his attorney, and the prosecuting attorney, and that nothing more was required. The district court therefore relied in part on the facts

admitted to in the plea in finding that the underlying elements of the § 11352 offense were established. Although Crawford disputes whether the abstract of judgment and the minute order are acceptable documentation, we need not comment on that argument. The plea, in conjunction with the charging documents, is sufficient to show that the California conviction was for a qualifying predicate drug offense and that the elements of the offense were satisfied. *Corona-Sanchez*, 291 F.3d at 1211.

### 2. Washington Conviction

[10] In 2001, Crawford pled guilty to conspiracy to deliver a controlled substance (crack cocaine) in violation of the Washington Revised Code § 69.50.407, which provides: "Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

The government provided the district court with the amended information, Crawford's plea agreement, several law enforcement affidavits supporting the plea agreement, and the state court's judgment of conviction and sentence. The amended information charged Crawford with:

> Conspiracy to deliver a controlled substance, committed as follows, that the defendant, Antonio Feliciano Crawford, in the State of Washington, on or about May 27, 1997, did knowingly and unlawfully conspire with at least one person other than the intended recipient to deliver a controlled substance, to-wit: crack cocaine, proscribed by RCW 69.50.407 [conspiracy] and 69.50.401(a) [controlled substance statute].

Crawford's plea agreement, in a hand-written note, reflects that the elements of the crime are adopted "as in amended

info." The plea agreement was signed by Crawford, defense counsel, the prosecuting attorney, and the state court judge. The state court entered a judgment of conviction and sentenced Crawford to 26 days' imprisonment.

**[11]** Under the Sentencing Guidelines, a predicate offense can qualify a defendant for career offender status if it is a "felony conviction[ ]" of "either a crime of violence or a controlled substance offense," U.S.S.G. § 4B1.1(a), where a "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense," *id.* § 4B1.2(b). The underlying controlled substance statute provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Wash. Rev. Code § 69.50.401(1) (2005). The statute also provides that "[a]ny person who violates this section with respect to (a) A controlled substance classified in Schedule I or II which is a narcotic drug . . . is guilty of a class B felony and upon conviction may be imprisoned for not more than ten years . . ." *Id.* § 69.50.401(2)(a) (2005).

**[12]** The district court concluded that the 2001 Washington conviction qualifies as a predicate offense because the maximum term for the crime was imprisonment for ten years based on the controlled substances statute. Crawford concedes that "[t]he conspiracy statute states that the maximum punishment may not exceed the maximum for the object of the conspiracy, in this case a Class B felony with a 10 year maximum." To avoid the application of that ten-year maximum, Crawford cites Wash. Rev. Code § 9.94A.120(6) (re-codified in 2001 as Wash. Rev. Code § 9.94A.505(2)(b)), and argues that under Washington's Sentencing Reform Act, conspiracy is an "un-

ranked" offense and, thus, the maximum sentence available is twelve months.

**[13]** We rejected an almost identical argument in *United States v. Murillo*, 422 F.3d 1152 (9th Cir. 2005). In *Murillo*, we considered whether, for purposes of determining "whether a Washington state criminal conviction is of a crime punishable by a term exceeding one year for purposes of prosecution under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm)," the "maximum sentence for [a] prior conviction is defined by the state criminal statute, [or] the maximum sentence in the particular case set by Washington's sentencing guidelines." *Id.* at 1153. We held that

> the maximum sentence that makes a prior conviction under state law a predicate offense under 18 U.S.C. § 922(g)(1) remains, after *Blakely*, the potential maximum sentence defined by the applicable state *criminal statute*, *not* the maximum sentence which could have been imposed against the particular defendant for his commission of that crime according to the state's *sentencing guidelines*.

*Id.* at 1155 (emphases added). We explicitly rejected the idea that *Apprendi v. New Jersey*, 530 U.S. 466, 471 (2000), or *Blakely* affected this definition of a predicate conviction:

> *Blakely* did not change the definition of what constitutes a maximum sentence under state law for purposes of prosecution under 18 U.S.C. § 922(g)(1).
> . . .
>
>    . . . .
>
> . . . Murillo's argument has nothing to do with *Apprendi* or *Blakely*. While *Apprendi*, and correspondingly *Blakely*, involved the "maximum sentence" a judge may impose based on the jury's

verdict or the defendant's admissions, Murillo attempts to extend *Apprendi* and *Blakely* to modify a crime's *potential* punishment . . . .

*Murillo*, 422 F.3d at 1154-55. Thus, Crawford's argument is foreclosed by *Murillo*. The 2001 Washington conviction qualifies as a predicate drug offense, and the district court did not err in relying on that offense in determining that Crawford was a career criminal.

**AFFIRMED**.