**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 18 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50161 |
| Plaintiff - Appellee, | D.C. No. 2:12-cr-00179-GAF-1 |
| v. | |
| JOHNNY STEWART, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50377 |
| Plaintiff - Appellee, | D.C. No. 2:12-cr-00179-GAF-3 |
| v. | |
| CLAYTON STEWART, aka Douglas Blackburn, etc., | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted September 1, 2015
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: GRABER, RAWLINSON, and WATFORD, Circuit Judges.

Johnny Stewart raises a number of arguments on appeal challenging his convictions and his sentence, while Clayton Stewart raises several arguments challenging his sentence. We will address Johnny Stewart's arguments first, before turning to the one argument that Clayton Stewart raises that relates to his sentence alone. We will then address the remaining arguments that are raised jointly with respect to both defendants' sentences.

1.   **Johnny Stewart's Arguments**

**a.** The district court did not abuse its discretion in denying Johnny Stewart's request for substitute counsel. The district court's inquiry into the attorney-client conflict was more than adequate. The court allowed Stewart "to express freely his concerns," *United States v. Castro*, 972 F.2d 1107, 1110 (9th Cir. 1992), *overruled on other grounds by United States v. Jimenez Recio*, 537 U.S. 270 (2003), and the court's questions were "targeted toward understanding the crux of the disagreement," *United States v. Mendez-Sanchez*, 563 F.3d 935, 943 (9th Cir. 2009). Those inquiries revealed that counsel had not abandoned Stewart or otherwise left him without trained legal representation. *Cf. United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9th Cir. 2010); *United States v. Adelzo-Gonzalez*,

268 F.3d 772, 777–80 (9th Cir. 2001). The decision not to appoint substitute counsel thus did not render involuntary Stewart's subsequent waiver of his right to counsel.

**b.** The government introduced sufficient evidence to support Stewart's convictions for aggravated identity theft. *See United States v. Nevils*, 598 F.3d 1158, 1163–65 (9th Cir. 2010) (en banc). Most significantly, Stewart possessed a thumb drive that contained detailed credit reports for individuals with good credit, each of whom was proved to be a real person. The jury heard no evidence suggesting that good credit histories can be developed through the use of purely synthetic identities. In addition, the thumb drive contained completed tax documents for one of the victims of the scheme. Given the record in this case, a reasonable jury could find that Stewart knew that "the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).

**c.** We reject Stewart's challenge to the validity of his convictions for money laundering. The activity charged in counts 19 and 21 of the indictment plainly meets the elements required to prove money laundering under 18 U.S.C. § 1956(a). Stewart transferred fraudulently obtained funds—the "proceeds" of bank fraud—from a checking account belonging to one of his sham businesses into a

different sham business's account after the first one was frozen. That activity was separate and distinct from the underlying fraud by which Stewart acquired the credit in the first place. *See United States v. Lomow*, 266 F.3d 1013, 1018 (9th Cir. 2001), *superseded by statute on other grounds as recognized in United States v. McEnry*, 659 F.3d 893, 899 n.8 (9th Cir. 2011).

We need not decide whether the activity charged in counts 18 and 20 of the indictment also satisfied the elements of the money laundering statute. Even if the district court should have dismissed counts 18 and 20 and entered convictions on only two counts of money laundering instead of four, that would not have made any difference in calculating Stewart's Sentencing Guidelines range. *See* U.S.S.G. §§ 2S1.1, 3D1.2(c), 3D1.3(a). Thus, no remand for resentencing would have been necessary. *See United States v. Baker*, 10 F.3d 1374, 1421 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000).

**d.** The district court did not abuse its discretion in imposing a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. On direct examination—in response to questions from his brother—Clayton Stewart testified that he did not know that the identifying information belonged to real people and that it was preferable to use the identity of an "artificial person" because it was

"less hassle." Johnny Stewart also elicited testimony that Clayton Stewart had never spoken to Postal Inspector Shen, who had investigated the Stewarts' scheme. The evidence at trial supports the conclusion that these statements were false. *See United States v. Garcia*, 135 F.3d 667, 671 (9th Cir. 1998). Inspector Shen testified that he had spoken to Clayton Stewart "face to face . . . on numerous occasions," including as part of the investigation into this case. With respect to the identifying information, as noted above, Stewart possessed a thumb drive that contained credit and address histories of the victims, including full credit reports of real people. The trial record also showed that a bank representative told Clayton Stewart (who was posing as victim A.S. at the time) that bank records showed A.S. had been an American Express cardholder since 1993.

These false statements were material. Knowledge that the identifying information belonged to real people was a necessary element for the aggravated identity theft charges, *Flores-Figueroa*, 556 U.S. at 657, and Clayton Stewart's denials that he spoke to Inspector Shen contradicted the testimony of the agent who identified his voice and testified more generally about the investigation into the scheme. The enhancement was therefore well supported.

That the district court did not make specific, on-the-record findings of materiality or willfulness does not compel a contrary conclusion. Although "it is

preferable for a district court to address each element of the alleged perjury in a separate and clear finding," *United States v. Cordova Barajas*, 360 F.3d 1037, 1043 (9th Cir. 2004) (quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)), "[s]uch express findings . . . are not required," *id.* And here, the district court did "make[] a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* (quoting *Dunnigan*, 507 U.S. at 95).

**e.** Given that the record supports the district court's finding that Johnny Stewart suborned at least some perjurious testimony by his brother, the district court did not err in refusing to decrease Stewart's offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 cmt. n.4.

**f.** The district court did not abuse its discretion in imposing a two-level enhancement for possession of device-making equipment. The record supports the finding that Johnny Stewart—who had fraudulent credit cards issued in his name—had at least constructive possession over premises at which agents seized not only passport-sized photographs of Stewart and materials for making driver's licenses, but also a card-cutting machine, which is clearly "designed or primarily used for making an access device." 18 U.S.C. § 1029(e)(6); *see also id.* § 1029(e)(1).

**g.** The restitution order requires Stewart to pay more than he gained by the fraud. The government concedes that the correct restitution amount is $404,284.80. We vacate the restitution order and remand for the limited purpose of allowing the district court to correct this error.

## 2. Clayton Stewart's Arguments

The district court did not plainly err in allowing Clayton Stewart to testify at his brother's trial outside the presence of counsel. *See* Fed. R. Crim. P. 52(b). No precedent of this court or the Supreme Court makes it "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993), that testifying at his brother's trial constituted a critical stage of Clayton Stewart's prosecution. Thus, Stewart cannot satisfy the first prong of the plain error test, which must be met even if the district court's failure to obtain a knowing and intelligent waiver of Stewart's right to counsel would otherwise amount to structural error. *See United States v. Yamashiro*, 788 F.3d 1231, 1234–36 (9th Cir. 2015).

## 3. Joint Arguments

**a.** The district court did not plainly err in imposing the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) in tandem with the § 2S1.1(b)(2)(B) enhancement for money laundering. The Sentencing Guidelines "expressly forbid[]" double-counting "where it is not intended." *United States v.*

*Rosas*, 615 F.3d 1058, 1065 (9th Cir. 2010) (quoting *United States v. Reese*, 2 F.3d 870, 894 (9th Cir. 1993)).  The Guidelines do not expressly forbid applying these two enhancements together.

**b.**  The district court did not abuse its discretion in imposing a two-level enhancement for aggravating role under U.S.S.G. § 3B1.1(c).  The Stewarts applied for the credit cards they used to make fraudulent charges; they made telephone calls to banks posing as their victims; and they opened sham businesses to launder their ill-gotten gains.  The record also supports the conclusion that the Stewarts directed the activities of Dexter Hardy, whose ID was found at the office of one of the brothers' sham businesses and who was paid in cash for carrying out less central tasks.  A "factual basis" thus exists for characterizing both Johnny Stewart and Clayton Stewart as organizers or leaders under § 3B1.1.  *United States v. Avila*, 95 F.3d 887, 890 (9th Cir. 1996); *see United States v. Ingham*, 486 F.3d 1068, 1074–75 (9th Cir. 2007).

**c.**  The district court did not abuse its discretion in imposing a two-level enhancement for the number of victims.  The Sentencing Guidelines call for a two-level increase "[i]f the offense" of conviction "involved 10 or more victims."  U.S.S.G. § 2B1.1(b)(2)(A).  Nothing in the Guidelines precludes a district court

from aggregating institutional victims and victims who are natural persons. *See id.* cmt. nn.1, 4.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED IN PART.**