UNITED STATES of America,
Plaintiff–Appellee,

v.

Terri PRUITT, Defendant–Appellant.

No. 06–3152.

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 2007.

Leon Patton, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Kansas City, KS, for Plaintiff–Appellee.

Melissa Harrison, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with her on the briefs), Kansas City, KS, for Defendant–Appellant.

Before O'BRIEN, HOLLOWAY and McCONNELL, Circuit Judges.

## ORDER ON PETITION FOR RE-HEARING WITH SUGGESTION FOR REHEARING EN BANC

This matter is before the court on the appellant's petition for panel rehearing, which also includes a request for en banc consideration. We also have a response from the government. Panel members Judge Holloway and Judge O'Brien have voted to grant the petition for panel rehearing for the limited purpose of correcting errors in the previously filed opinion. The panel petition is otherwise denied. Accordingly, it is hereby ordered that the decision filed herein on June 4, 2007, is withdrawn and the attached opinion is ordered filed in its place. Judge McConnell's original concurring opinion is re-filed with the new opinion.

The petition, including the en banc suggestion, was circulated to all of the members of the court who are in regular active service. No judge called for a poll. Accordingly, the request for rehearing en banc is denied.

HOLLOWAY, Circuit Judge.

Defendant–Appellant Terri Pruitt (Pruitt) pleaded guilty to distribution of five or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). She appeals the sentence that the district court imposed. We have

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we **AFFIRM.**

## I.  BACKGROUND

### A.  Pruitt's Criminal History and the Instant Offense

Pruitt is a 42–year–old woman with three prior convictions for selling illegal drugs and a criminal history spanning two decades.

In 1985, Pruitt completed a one-year diversion[1] for a DUI charge, filed under Kansas law.  In 1987, Pruitt was arrested and charged with possession of methamphetamine and conspiracy to possess or sell cocaine, both felonies under Kansas law.  R., Vol. IV, at 7; R. Vol. I, tab 20, at 1. Before Pruitt pleaded guilty to these offenses, she was convicted of aggravated failure to appear in court because she failed to appear as ordered by the court. R., Vol. IV, at 8. Pruitt ultimately pleaded guilty to these drug-related felonies, and she served four years on probation (until April 1991).  *Id.* at 7.

Approximately eight months after she was released from probation, Pruitt was again arrested and charged with committing drug-related crimes, this time possession with intent to sell marijuana and possession of cocaine, felonies under Kansas law.  *Id.* at 9. On this occasion, Pruitt brought her then-infant daughter to a drug transaction and was found in possession of 102.1 grams of marijuana, 10 plastic "baggies," 13 syringes, a metal tin containing cocaine, a plastic spoon, various types of pills, a mirror, a razor blade, a set of scales, and $420.  *Id.* But before the court could adjudicate her case, Pruitt was arrested and charged with another drug-related offense—sale of methamphetamine in violation of Kansas law.  *Id.* at 10. Pruitt was convicted of all of these felonies

and served about four years in prison.  *Id.* at 9–10;  R., Vol. I, tab 20, at 1–2.  She was paroled in 1996 and discharged from parole in 1998.  R., Vol. IV, at 9.

Seven years later, Pruitt would again find herself charged with a drug-related crime.  On April 27, 2005, the Government indicted Pruitt for knowingly and intentionally distributing five or more grams of methamphetamine.  R., Vol. I, tab 1, at 1. On November 22, 2004, a confidential drug informant told a DEA Special Agent that Pruitt was involved in distributing multiple-ounce quantities of methamphetamine. R., Vol. IV, at 4; R., Vol. II, at 15.  Based on this information, the Government decided to execute a controlled purchase of methamphetamine from Pruitt.  R., Vol. IV, at 4;  R., Vol. II, at 15.

On November 29, 2004, the informant and Pruitt arranged to meet at Pruitt's residence and agreed that Pruitt would sell the informant one to two ounces of methamphetamine.  R., Vol. IV, at 4;  R., Vol. II, at 15.  The informant arrived at Pruitt's residence as planned, and Pruitt provided the informant with one ounce of methamphetamine in exchange for $1,350. R., Vol. IV, at 4–5;  R., Vol. II, at 15–16. The informant pressed Pruitt on when she would have more methamphetamine, to which she responded that she was working to procure another ounce.  R., Vol. IV, at 4. The Government contended in Pruitt's change-of-plea hearing that Pruitt and the informant also discussed conducting a future sale of two ounces of methamphetamine for $2,500.  R., Vol. II, at 16.  When the court asked Pruitt if "[she] did in fact do exactly what counsel for the government indicated," Pruitt replied, "[y]es, sir, I did."  *Id.* The substance that Pruitt sold to the informant contained 29.4 net grams

---

1.  A diversion allows a qualifying defendant to avoid a DUI conviction if he or she stipulates to the police report's accuracy and complies with certain restrictions for one year.

of 63% pure methamphetamine. R., Vol. IV, at 5; R., Vol. II, at 16.

After initially pleading not-guilty to the offense, Pruitt changed her mind and entered a guilty plea. *See generally* R., Vol. II (transcript of Pruitt's change-of-plea hearing).

### B. The Sentence Imposed

The district court sentenced Pruitt to 292 months' imprisonment and 8 years' supervised release, and levied a special assessment of $100. R., Vol. I, tab 36, at 2–7. The court also allowed Pruitt to receive correctional treatment that she desired and imposed restrictions consistent with those normally imposed on convicted felons, parts of the sentence that Pruitt does not challenge here. *Id.* The 292–month term of imprisonment is a within-Guidelines sentence that represents the lowest end of the applicable Guidelines range.

The district court first recognized that *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), rendered the Sentencing Guidelines advisory. R., Vol. III, at 21–22. The court explained that it was required to calculate Pruitt's sentence under the Guidelines, but that it would consider the Guidelines range as one factor among other relevant 18 U.S.C. § 3553(a) factors. *Id.* at 22.

The court then addressed the sentence. Closely tracking the factors set forth in § 3553(a), the court considered the nature and circumstances of the offense; Pruitt's history and characteristics; and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the Defendant. *Id.* at 23–27. *See* excerpts from the district court's decision *infra* pp. 1160–62.

In essence, the district court stated that although it had authority to vary from the Guidelines range, no factors warranted doing so. Thus, the district court concluded that 292 months' imprisonment is a reasonable sentence under the circumstances.

## II. DISCUSSION

Pruitt argues that this court should not accord a presumption of reasonableness to a within-Guidelines sentence, nor should this court accord a presumption of reasonableness to a sentence within U.S.S.G. § 4B1.1, the Guidelines's career-offender provision. Further, Pruitt argues that the district court erred by failing to rule on whether Pruitt was entitled to a two-level reduction in offense level for acceptance of responsibility; by failing to adequately state its reasons for refusing to impose a below-Guidelines sentence; and by imposing a substantively unreasonable sentence of 292 months' imprisonment.

### A. Presumption of Reasonableness to a Within–Guidelines Sentence

■ We have expressly rejected Pruitt's first argument that according a Guidelines-range sentence a presumption of reasonableness violates *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *United States v. Kristl,* 437 F.3d 1050, 1055 (10th Cir.2006), we held that a sentence within the properly-calculated Guidelines range is presumptively reasonable, but subject to rebuttal in light of § 3553(a)'s other sentencing factors.

The Supreme Court in *Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), held that it is consistent with *Booker* to accord a presumption of reasonableness to a within-Guidelines sentence, thus approving of our holding in *Kristl.* Thus, we will review the substantive reasonableness of the sentence using that presumption.

## B. Presumption of Reasonableness to a U.S.S.G. § 4B1.1 Sentence

Pruitt's second argument reads like a recapitulation of her first argument: just as this court should not accord a presumption of reasonableness to a within-Guidelines sentence, she argues, this court should also decline to accord a presumption of reasonableness to a sentence within the Guidelines's career-offender provision. We disagree. The logical extension of our holding in *Kristl*—that a within-Guidelines sentence is presumptively reasonable—is that a sentence within the career-offender range, which is part of the Guidelines, is also presumptively reasonable.[2]

Pruitt attempts to distinguish *Kristl* by resorting to Sentencing Commission reports about, and her own criticisms of, the career-offender provision: Pruitt argues that a presumption-of-reasonableness standard is especially unwarranted when applying U.S.S.G. § 4B1.1 because a sentence under § 4B1.1 might overstate the seriousness of a defendant's record and create an excessive deterrent effect. Moreover, Pruitt asserts, the Sentencing Commission noted in a recent report that low-level drug traffickers have lower recidivism rates than career offenders with violent backgrounds. She also relies on an other Sentencing Commission publication in which the commission noted that women have lower recidivism rates than men. According to Pruitt, these reports reveal that, in some cases, a sentence imposed under § 4B1.1 will conflict with the sentence that should be imposed in light of 18 U.S.C § 3553(a).

Pruitt fails to recognize that these examples and statements bear little to no correlation to her extensive criminal history. Thus, even if we were able to create the exception that Pruitt proposes, the facts here bear so little correlation to the problems identified in the Commission's reports that we would need to disregard the case before us, and speculate about hypothetical cases and facts, before determining that creating the exception is a wise panacea to unreasonable sentences. We are unwilling to create such an important exception based on such speculation. Consistent with *Kristl*, we therefore will accord a presumption of reasonableness to a sentence within the Guidelines's career-offender range.

## C. Acceptance of Responsibility

A defendant is entitled to a two-level downward adjustment for acceptance of responsibility if he or she clearly demonstrates acceptance of responsibility for

---

2. Without explicitly addressing this issue and arguments like Pruitt's, this circuit and others have accorded a presumption of reasonableness to sentences falling within a career-offender range. *See, e.g., United States v. Smith,* 2007 WL 666459 (10th Cir.2007) (unpublished) (applying a presumption of reasonableness to a sentence enhanced by a career-offender provision); *United States v. Thomas,* 183 Fed. Appx. 742 (10th Cir.2006) (unpublished) (same); *United States v. Rockey,* 449 F.3d 1099 (10th Cir.2006) (applying a presumption of reasonableness to a sentence enhanced by the Armed Career Criminal Act); *United States v. Brumley,* 2007 WL 79040 at *2 (6th Cir.2007) (unpublished) (stating that "although the sentence enhancement for [the defendant's] career offender status greatly in creased his guideline range, a sentence within or below that range was presumptively reasonable"); *United States v. Stark,* 168 Fed. Appx. 738, 740 (7th Cir.2006) (unpublished) (assuming that a presumption of reasonableness applies to a sentence enhanced by a career-offender provision); *United States v. Parker,* 176 Fed. Appx. 358, 359–60 (4th Cir. 2006) (unpublished) (according a presumption of reasonableness to a sentence enhanced by a career-offender provision); *United States v. Gladney,* 184 Fed. Appx. 586, 589 (8th Cir.2006) (unpublished) (stating that "we [are not] persuaded by [the defendant's] argument that his borderline status as a career offender rendered a guidelines sentence unreasonable. The advisory guidelines sentence is presumptively reasonable ...").

his or her offense. U.S.S.G. § 3E1.1(a)[3] But even if the defendant clearly demonstrates that he or she has accepted responsibility for the offense, U.S.S.G. § 3E1.1(b)[4] permits the court to decrease the defendant's offense by one additional level only upon the government's motion or, when the government refuses to file a motion, if the sentencing court concludes that the refusal was "animated by an unconstitutional motive or not rationally related to a legitimate government end." *United States v. Moreno–Trevino,* 432 F.3d 1181, 1186 (10th Cir.2005).

Pruitt did not allege before the district court that either circumstance is present here. The pre-sentence report, which Pruitt did not object to, put Pruitt on notice that the Government did not intend to file a motion under § 3E1.1. R., Vol. IV, at 6. Consistent with this intent, the Government never filed a § 3E1.1 motion. But instead of asserting that the Government's refusal to do so was animated by an unconstitutional motive or not rationally related to a legitimate government end, Pruitt stated:

> I know that you're prepared to rule. There are, however, two things that I forgot to bring to the court's attention which I need to do for the record. One is that the sentence of 292 to 365 months is without the third point for acceptance of responsibility.... The defendant would ask the court, if the court intends to sentence within the guideline range, to consider adjusting the sentence under Booker to reflect that since it is and has

been in my experience the policy of the United States Attorney's office to not move for the third point when one does not waive appeal.... I [also want the court to note that Pruitt] did offer ... to cooperate in this case, and that offer was declined.

R., Vol. III, at 20.

As before the district court, Pruitt has not asserted on appeal that the Government's failure to file a § 3E1.1 motion was animated by an unconstitutional motive or not rationally related to a legitimate government end. Indeed, as in the district court, she has not directed us to any facts to satisfy these standards or cited any authority supporting her position. Instead, she claims that the district court failed to resolve this issue and then she moves on to the next section of her brief. *See* Aplt. Br. at 20.

Because there is no evidence that the Government improperly refused to file the motion, and because Pruitt did not make this argument before us or the district court, we have no authority to review the Government's refusal to file a § 3E1.1 motion. *See Moreno–Trevino,* 432 F.3d at 1187.

### D. Procedural Reasonableness: Explanation for the Sentence

▮ The district court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when imposing a sentence.[5] Although the district court need

---

**3.** U.S.S.G. § 3E1.1(a) states that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."

**4.** U.S.S.G. § 3E1.1(b) provides that "[i]f the defendant qualifies for a decrease under subsection (a) ... and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely

notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level."

**5.** This provision instructs district courts that, in addition to the Guidelines range and Sentencing Commission policy statements, "[a]

not recite "any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider," we will not presume that the district court fulfilled its duty if the record provides no indication that it did so and no clear explanation of the sentence imposed. *United States v. Sanchez–Juarez,* 446 F.3d 1109, 1115–16 (10th Cir.2006).

This does not suggest, however, that we subject the district court's decision to the highest scrutiny. On the contrary, we recently held that "a specific discussion of Section 3553(a) factors is not required for sentences falling within the ranges suggested by the Guidelines. . . ." *United States v. Ruiz–Terrazas,* 477 F.3d 1196, 1202 (10th Cir.2007). Instead, when the district court imposes a within-Guidelines sentence, the court must provide "only 'a general statement noting the appropriate guideline range, and how it was calculated.' " *Id.* (further citation and internal quotation marks omitted). If the district court did so, "we will step in and find error when the record gives us reason to think that our ordinary (*Lopez–Flores* ) presumption that the district court knew and applied the law is misplaced." *Id.*

Pruitt quotes from the district court's decision and refers us to *United States v. Sanchez–Juarez,* 446 F.3d 1109 (10th Cir.2006), *United States v. Carty,* 453 F.3d 1214 (9th Cir.2006), and *United*

*States v. Cunningham,* 429 F.3d 673 (7th Cir.2005), as illustrative of a district court's failure to adequately consider § 3553(a)'s sentencing factors and other arguments for a below-Guidelines sentence. Specifically, Pruitt argues that the district court considered the bare fact that she had several prior convictions, but failed to substantively comment on her arguments for a lower sentence beyond merely stating that it considered the presentence report and the Guidelines. Pruitt claims that she made several non-frivolous arguments supporting her request for a lower sentence: the career-offender provision is not an accurate predictor of recidivism; her two prior convictions that rendered her a career offender involved a small quantity of drugs; the convictions occurred within two months of each other; she served prison time for those convictions and successfully discharged her parole; she graduated from high school; she had no criminal convictions since 1992; she asked for and received in-patient drug counseling; she was released to a halfway house and then released early for good behavior; she was employed during the time of her release; and she did not test positive for drugs during her release.

We note, however, that the merits of these arguments are disputed. For example, although Pruitt asserts that her pretrial-release behavior in this case has

court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a).

been laudable, the Government and pre-sentence report note that Pruitt violated the terms of her release on two occa-sions—once by failing to advise her pre-trial officer of an address change and once by marrying an individual who is under federal court supervision. R., Vol. I, tab 33, at 2; R., Vol. IV, at 3. Similarly, Pruitt characterizes her receipt of in-patient drug counseling as a mitigating factor, but the pre-sentence report reveals that her bond required her placement at a drug-counsel-ing facility. R., Vol. IV, at 15. Moreover, Pruitt invokes a general but inapplicable proposition about recidivism. We have never required a district court to address frivolous arguments before imposing a criminal sentence. Indeed, when a defen-dant argues for a downward variance and the district court imposes a sentence at the low-end of the Guidelines range, this "may fairly be read as a functional rejection of [the defendant's] arguments and a denial of his [or her] request for a below-Guide-lines sentence." *Sanchez–Juarez,* 446 F.3d at 1115.

The district court here correctly ana-lyzed the § 3553(a) sentencing factors, so we find no reason to reject the presump-tion that the district court knew and ap-plied the law. *See Ruiz–Terrazas,* 477 F.3d at 1202. The court considered the nature and circumstances of the offense and the Defendant's history and character-istics:

> [w]hat was also clear to the court is that this in fact is the fourth time that you've been in front of a court for sentencing after having been convicted of selling illegal drugs.... If nothing else, this court would agree ... [that] like many people who come before this court, it seems that you've had several tragic events and circumstances take place in your life. Whether or not others were responsible for that, it's clear that you believe that's been the case early on as to what took place with you, how that

affected you. At some point, though, the court would inform you that you became responsible for your actions, for your conduct as it related not only to your life but others, and as a result, it's also clear that on different occasions you chose willingly or unwillingly, based on how you believed it took place, but the fact remains that you chose to violate the law, and as a result, there were consequences that took place. In effect, this court has an obligation to give you what it believes to be a reasonable sen-tence under the law, and the other reali-ty is that this court gives reasonable sentences for people who have led un-reasonable lives. It's difficult for this court to try to imagine how a reasonable person in your circumstances would have continued to violate the law in the manner that—which you did under the circumstances in which you did. There is something to the argument that peo-ple only get so many chances....

R., Vol. III, at 23–24 (errors in original).

The court then considered the need for the sentence imposed to reflect the seri-ousness of the offense, promote respect for the law, and provide just punishment for the offense:

> the court notes ... that in two of these prior cases [in which you were convicted of selling illegal drugs], the sentencing range included a possible maximum of 10 years. Since no mitigating factors were identified in the presentence re-port, a sentence which is equivalent to the low end of the advisory guideline range reflects the seriousness of the of-fense, promotes respect for the law and provides just punishment.

*Id.* at 26.

The court considered the need for the sentence imposed to adequately deter criminal conduct:

[t]here is something to the argument that people can only get so many chances, and at certain points, it appears that they're not having any effect on the person, they're continuing with the same conduct. The court questions whether or not these sentences [for your prior convictions] have actually been a deterrent to you in regards to you committing the crimes that you've committed over these number of years.... [A]gain, the court notes that this is your fourth conviction involving the sale of illegal drugs, and again, it appears that your previous sentences did not provide a sufficient deterrent against this type of conduct.... Additionally, this term of supervision [imposed after Pruitt's release] should help deter, hopefully[,] any future criminal behavior by the defendant.

*Id.* at 24–27.

The court considered the need for the sentence imposed to protect the public from further crimes of the Defendant:

[a]t some point, though, the court would inform you that you became responsible for your actions, for your conduct as it related not only to your life but others.... The court doesn't discount the fact that [292 months] is a harsh sentence for you. In reaching this determination, the court has considered ... [t]hat the length of the sentence should afford adequate deterrence and protect the public from further crimes of the defendant....

*Id.* at 24.

It is clear that the court considered this factor when noting that Pruitt has been before a court three prior times for selling illegal drugs, conduct that related to and affected others.

The court considered the need for the sentence imposed to provide Pruitt with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:

"Based on the information in the presentence report suggesting that you've experienced some traumatic events in your life, a condition of supervision allowing for participation in a mental health counseling program is appropriate." *Id.* at 28.

Finally, the court described the substantive weight it accorded to a within-Guidelines sentence:

In reaching this determination [that a 292–month sentence is reasonable], the court has considered, number one, that the sentencing range developed from the application of the advisory guidelines incorporates a number of directives from congress to the sentencing commission concerning the sentencing of offenses, including the purposes of sentencing set forth at 18 U.S.C. Section 3553 A 2[sic]. Therefore, a sentence imposed within the range determined by the guidelines may be given substantial weight in the determination of a just and reasonable sentence in accordance with the provisions of 18 United States Code Section 3553 A 2 A[sic] through C.

R., Vol. III, at 25.

These excerpts demonstrate that the district court thoroughly considered the sentencing factors set forth in 18 U.S.C. § 3553(a). The district court acknowledged that Pruitt experienced tragic events in her life, but noted that her circumstances were not materially different from the circumstances presented by most other defendants in the criminal justice system—a conclusion to which the presentence report assented. R., Vol. III, at 26; R., Vol. IV, at 20. The district court then addressed each sentencing factor in light of the facts presented.

As we explained in *Ruiz–Terrazas*, a specific discussion of § 3553(a) factors is not required, but that does not mean that our precedent describes best practices. *Ruiz–Terrazas*, 477 F.3d at 1202. "In-

deed, a more detailed sentencing explanation can often prove beneficial, even if it is not mandatory, helping to reduce confusion among the parties, facilitate and expedite judicial review, and provide guidance to practitioners and other defendants, enabling them to better predict the type of sentence that will be imposed in their cases." *Id.*

We also add another important benefit to this list: to hold open to public scrutiny the judiciary's reasoning behind depriving a person of a most fundamental right— liberty. In a system where the judiciary controls neither the sword nor the purse, as Hamilton described our circumstances in The Federalist No. 78, the courts must rely on the persuasiveness of their opinions to command respect. The "district court's unique familiarity with the facts and circumstances of a case," *id.* at 1201, especially qualify it for explaining why a defendant's arguments do not militate against a particular sentence. Although we emphasize that our precedent does not impose this exacting duty of explanation, the district court satisfied it here.

Pruitt's authorities do not require a different result. The commonality between all the cases that she cites is that "the [district] court stated no reasons for the sentence it imposed, other than first noting that it had reviewed the PSR's factual findings and considered the Guidelines applications, and then citing [the defendant's] offense conduct." *See Sanchez–Juarez,* 446 F.3d at 1115. Moreover, in the cases she cites, "[t]he record indicates that at no time during the sentencing hearing or when imposing the sentence did the district court refer to the § 3553(a) factors." *See id. See also Carty,* 453 F.3d at 1221 (stating that "[t]he district court ... did not comment substantively on any of [the parties' materials] in rendering its sentence. It did not discuss any of the goals and factors enumerated in § 3553(a) or

how they might have impacted its determination with respect to [the defendant]. Rather, the district court simply adopted the PSR and imposed a sentence at the bottom of the Guideline range"); *Cunningham,* 429 F.3d at 676–77 (stating that "[t]he judge brushed aside [the defendant's] argument" even though the defendant detailed a long history of psychiatric problems and provided evidence about his minimal role in the offense, but the court "gave substantial weight" to a "vague, belated, [and] unsubstantiated" argument put forth by the government and failed to state more about § 3553(a) factors than "given all of the factors that I have to adhere to ... [and the fact that you sold drugs to the informant on several occasions,] I'm going to sentence you to a 57–month sentence ...."). As we have seen, however, the district court here thoroughly evaluated Pruitt's conduct in light of potentially mitigating facts and each of § 3553(a)'s sentencing factors.

Pruitt does not challenge the district court's calculation of the Guidelines range, and the district court adequately explained its reasons for imposing the sentence it did. Thus, we find no procedural error in the district court's decision. *See Sanchez–Juarez,* 446 F.3d at 1117 (distinguishing substantive and procedural components of reasonableness review).

### E. Substantive Reasonableness of the Sentence

█ Although the district court sufficiently explained its reasons for imposing a 292–month sentence, we must ask whether the sentence is substantively reasonable. When reviewing a sentence for reasonableness, "we review factual findings for clear error and legal determinations de novo." *Kristl,* 437 F.3d at 1054. We held in *Kristl* that "a sentence that is properly calculated under the Guidelines is entitled

to a rebuttable presumption of reasonableness. This is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Id.*

Pruitt attempts to trek this upward climb by claiming that courts have reduced criminal sentences when § 4B1.1 overstates a defendant's criminal history, a defendant's prior convictions were close in time, and a defendant poses a low-risk of re-offending. Thus, Pruitt argues that her sentence is unreasonable because two of her prior convictions were close in time, she has been employed and well-behaved since her release from prison, and she has a nonviolent history. She notes that if she were not a career offender, she would face a mandatory minimum of 10 years' imprisonment, significantly lower than the 292–month sentence she received.

To be sure, this sentence might represent the outer-boundary of what would be reasonable in this case, despite the fact that 292 months' imprisonment represents the bottom of the applicable range under the career-offender provision. Pruitt rightly identifies the fact that she has a nonviolent history, that two of her convictions were close in time, and that she has not been charged with possessing or selling exorbitant amounts of drugs. However, we are not persuaded by Pruitt's attempt to minimize the seriousness of her lawlessness. It is clear that her prior sentences did not deter her criminal conduct. And whatever the surprise that Pruitt's drug-related convictions in 1992 counted as felonies under Kansas law, it is impossible to deny that Pruitt's present conviction is her fourth felony conviction for a drug-related offense.

Moreover, we give little credit to Pruitt's blanket statements that women have lower recidivism rates than men and that low-level street dealers are unlikely to recidivate, as this conviction makes her a repeat-repeat-repeat-repeat offender (not counting her DUI charge, for which she was granted a one-year diversion). Partly for this reason, we are not persuaded by Pruitt's generalizations about courts reducing sentences when the sentence overstates the defendant's criminal history and when the defendant poses a low risk of reoffending. For example, Pruitt asks us to compare her case to *United States v. Bowser*, 941 F.2d 1019 (10th Cir.1991), *United States v. Williams*, 435 F.3d 1350 (11th Cir.2006), *United States v. Reyes*, 8 F.3d 1379 (9th Cir.1993), and *United States v. Lawrence*, 916 F.2d 553 (9th Cir.1990)—claiming that these cases demonstrate that her sentence is unreasonable.

We have performed this analysis, and we find Pruitt's comparisons unpersuasive. In *Bowser*, which was decided before *Kristl* created the presumption-of-reasonableness standard, we affirmed a downward variance because the predicate felonies for invoking § 4B1.1 were two non-drug-related felonies that the defendant committed within months of each other when he was 20 years old. *Bowser*, 941 F.2d at 1023. Although "it [was] our conclusion that the [close proximity of the two felonies] would have been unsuitable as an isolated rationale for downward departure, the [district] court viewed the short time span in the context of the defendant's age and the state court's [decision to impose a concurrent sentence for] the two convictions," an intersection of factors we called "unique." *Id.* at 1024–25. After we recognized that a "deferential standard of review" applied and that "[t]he district court was in the best position to make a decision about the proper sentence for this defendant," we held that "[a]ccording the district court ·the deference due it, we will not disturb this sentencing decision." *Id.* at 1026.

The district court decision under review in *Williams* imposed a sentence below the Guidelines range because, in its view, "188 months in prison for selling $350 worth of cocaine is akin to the life sentence for the guy that stole a loaf of bread in California. To me, that ... does not promote respect for the law and is way out of proportion to the seriousness of the offense and to [the defendant's] prior criminal conduct." 435 F.3d at 1352–53. The defendant in *Williams* had been convicted once of possession of cocaine with intent to sell or deliver and once of carrying a concealed firearm, a conviction based on the defendant having been found with a handgun "at his feet." *Id.* at 1355. The Eleventh Circuit upheld the sentence because "the district court correctly calculated the Guidelines range and gave specific, valid reasons for sentencing lower than the advisory range." *Id.*

Comparably to *Williams, Reyes* affirmed a downward variance because the defendant had a criminal history that "uniformly involved 'minor' offenses." 8 F.3d at 1386. Between 1984–1989, the defendant in *Reyes* was convicted for opiate use, possession with intent to sell six "baggies" of marijuana, attempted theft from a department store, obstructing a public officer, possession of drugs (including .45 grams of cocaine and .10 grams of heroin), and possessing and delivering $20–worth of cocaine. *Id.* at 1381.

Although *Lawrence* also affirmed a downward variance, which the district court based in part on a psychiatrist's testimony that the likelihood of recidivism was low, the Ninth Circuit noted that the government did not make an as-applied challenge to the district court's variance— just its authority to impose the lower sentence in the first instance. 916 F.2d at 554, 555, 555 n. 5. So the circuit court of appeals never reviewed whether the extent of the variance was reasonable.

*Pruitt's* authorities are easily distinguishable. Most of these decisions affirmed downward variances under a standard according deference to the district courts or, in the case of *Lawrence,* did not review the extent of the variance at all. We neither have a psychiatrist's (or anyone's) particularized conclusion about recidivism, as in *Lawrence,* nor a situation where an immature college student with an otherwise clean record committed crimes on two occasions within two months, as in *Bowser.* And although the defendant in *Reyes* was convicted several times, the pre-sentence report here reveals that Pruitt has been convicted of just as many crimes, in more serious circumstances, over a longer time—highlighting her status as a career offender. For example, as noted above, Pruitt's first run-in with the law occurred in 1985 when she received a one-year diversion after being charged with DUI; in 1989, Pruitt was convicted of possession of methamphetamine and conspiracy to possess or sell cocaine; in 1989 she was convicted of aggravated failure to appear in court; in 1992 she was convicted of possession with intent to sell marijuana and possession of cocaine after she brought her infant child to a drug transaction and was found to be in possession of 102.1 grams of marijuana, 10 plastic "baggies," 13 syringes, a metal tin containing cocaine, a plastic spoon, various types of pills, a mirror, a razor blade, a set of scales, and $420; and in 1992, she was also convicted of selling methamphetamine. R., Vol. I, tab 20, at 1–2; R., Vol. IV, at 7–11. Now she has been convicted of distributing methamphetamine.

Finally, unlike the defendant in *Williams,* who had one prior conviction for possessing drugs with the intent to sell and one separate firearm conviction, Pruitt faces a sentence for her fourth drug-related felony. The district court here properly recognized a significant need to deter

Pruitt from continually violating the law, prevent her from selling illegal drugs, make the sentence reflect the seriousness of the offense, and promote respect for the law—which Pruitt has continually failed to exhibit. Thus, unlike in *Williams,* we are presented with a case where the district court gave specific, valid reasons for sentencing within the Guidelines. We cannot agree that imposing a harsh sentence for Pruitt's fourth drug-related felony "is akin to the life sentence for the guy that stole a loaf of bread in California." *See Williams,* 435 F.3d at 1352–53.

In sum, it is irrelevant that other courts have imposed lower sentences in circumstances that are absent here. Indeed, to continue the trend by granting Pruitt's wish to serve a shorter sentence (she served probation for her first conviction and only four years for her next two felony convictions, despite the fact that she could have served up to 20 years' imprisonment) would malign the district court's reasonable view that we can promote respect for law and adequately punish Pruitt only by taking her lawlessness seriously and imposing a within-Guidelines sentence. It would also ignore the undisputable fact that current federal policy favors harsh sentencing for drug offenses.

Pruitt's arguments also fail to appreciate the burden she must overcome to rebut the presumption of reasonableness that we accord to her sentence. A defendant must rebut the presumption of reasonableness by showing that the "sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Kristl,* 437 F.3d at 1054.

The district court's cogent analysis of the § 3553(a) factors underscores the reasonableness of Pruitt's sentence. As noted above, the district court acknowledged that Pruitt experienced some tragic events in her life, but concluded that four convictions for selling illegal drugs was enough to justify a long prison sentence. Selling methamphetamine and illegal drugs is a serious offense that detrimentally impacts other people's lives, including the innocent people put in jeopardy by the drug sale itself—like Pruitt's then-infant daughter during a drug sale in 1992. When a defendant faces a sentence for her fourth drug-related conviction, it is reasonable to infer that she is not easily deterred from engaging in unlawful conduct. Recognizing these facts and others consistent with the § 3553(a) factors, the district court reasonably concluded that Pruitt deserved a sentence within the Guidelines range.

Pruitt has failed to rebut the presumption of reasonableness accorded to her within-Guidelines sentence. Regardless, the sentence would be reasonable—even if marginally so—absent the presumption. Thus, we find no error in the district court's decision to sentence Pruitt to 292 months' imprisonment, and it is accordingly **AFFIRMED.**

IT IS SO ORDERED.

McCONNELL, Circuit Judge, concurring.

Two years have passed since the Supreme Court declared the federal Sentencing Guidelines advisory and instructed the courts of appeals to review criminal sentences for "reasonableness," *United States v. Booker,* 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and more than a year has passed since this Court interpreted that directive as creating a rebuttable presumption of reasonableness for within-Guidelines sentences, *United States v. Kristl,* 437 F.3d 1050, 1054 (10th Cir.2006). Yet after watching this Court—and the other Courts of Appeals, whether they have formally adopted such a presumption or not—affirm hundreds upon hundreds of within-Guidelines sentences, it seems to me that the rebuttability of the presumption is more theoretical than real. In view

of the resources devoted to appeals of within-Guidelines sentences, it might be better if we were more candid in acknowledging this.

## I.

This sentence comes as close as a within-Guidelines sentence could come to being substantively unreasonable. The defendant, Terri Pruitt, was convicted of selling 18.5 grams of methamphetamine. While this is a nontrivial quantity of narcotics, it hardly qualifies her as a major dealer. She has three prior drug felonies on her record, two of which occurred within a month of each other in 1992, and one of which occurred in 1987. All three prior crimes involved small quantities of narcotics, and all, like her current offense, were nonviolent.[1] Had this been her first offense, her Guidelines sentencing range would have been 51 to 63 months. Accounting for her criminal history, but without applying the career offender guideline, her sentencing range would have been 63 to 78 months. But because the career offender guideline, U.S.S.G. § 4B1.1, applies, Ms. Pruitt's sentencing range is 292 to 360 months. The district court sentenced her to 292 months in federal prison.

Except, perhaps, to judges numbed by frequent encounters with the results of the Sentencing Guidelines, Ms. Pruitt's is an exceptionally long sentence. By comparison, a defendant who commits second degree murder, but has no criminal history, would have a sentencing range of 235 to 293 months. *See* U.S.S.G. § 2A1.2(a). Moreover, it does not matter, for sentencing purposes, whether Ms. Pruitt's prior

drug felonies were large-scale or petty, violent or nonviolent. Her sentencing range would be the same. One might reasonably ask whether a guideline that treats a defendant who has committed a series of relatively minor and nonviolent drug crimes more severely than a murderer, and that takes no account of the seriousness of the predicate crimes, always accounts for "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §§ 3553(a)(1).

Even the U.S. Sentencing Commission has criticized the sweep of § 4B1.1. In its Fifteen Year Report, issued in 2004, the Commission examined empirical evidence regarding "whether the career offender guideline, especially as it applies to repeat drug traffickers, clearly promotes an important purpose of sentencing." U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 134 (Nov.2004). It concluded that "[i]ncapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else." *Id.* Moreover, the Commission noted that

> preliminary analysis of the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions shows that their [recidivism] rates are much lower than other offenders who are assigned to criminal history category VI.... The recidivism rate for career

---

**1.** The presentence report ("PSR") states that the 1987 offense involved 28 grams of cocaine and garnered a sentence of probation. R. Vol. IV, at 7–8. The first 1992 offense involved 102.1 grams of marijuana and a "metal tin containing cocaine." *Id.* at 9. The second 1992 offense occurred about a month later, and though the PSR does not state the

amount of methamphetamine involved, Ms. Pruitt asserts it was only $70 worth-a contention that the government does not contest. Br. of Appellant 4–5. Ms. Pruitt's 1992 convictions resulted in 44 months imprisonment and about 21 months of parole. R. Vol. IV, at 9–10.

offenders more closely resembles the rates for offenders in the lower criminal history categories in which they *would be* placed under the normal criminal history scoring rules.... The career offender guideline thus makes the criminal history category a *less* perfect measure of recidivism risk than it would be without the inclusion of offenders qualifying only because of prior drug offenses.

*Id.* This might appear to be an admission by the Commission that this guideline, at least as applied to low-level drug sellers like Ms. Pruitt, violates the overarching command of § 3553(a) that "[t]he court ... impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2), including "the need for the sentence ... to provide just punishment for the offense," § 3553(a)(2)(A); "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B); and "to protect the public from the further crimes of the defendant," § 3553(a)(2)(C).

I recognize that Congress enacted a statute requiring the Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for" drug felony defendants who have two prior drug felonies. 28 U.S.C. § 994(h). As the ultimate architect of sentencing policy (within constitutional limits), Congress's determination that three-time drug felons deserve sentences at the statutory maximum might well be dispositive for purposes of determining statutory reasonableness. But, as the Commission has noted, it is significant that Congress expressed this policy by directing the Commission to adjust the Guidelines rather than by enacting a statutory mandatory minimum. U.S.S.G. § 4B1.1 cmt. background. The Senate Judiciary Committee explained that by employing a more flexible directive rather than a binding mandatory minimum, "the guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S.Rep. No. 98–225, at 175 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3358. Employing that flexibility, the Commission has tweaked the definition of career drug offender in the guideline "in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.'" U.S.S.G. § 4B1.1 cmt. background (quoting 28 U.S.C. § 991(b)(1)(B)). This suggests that Congress's judgment regarding three-time offenders should not be understood as absolute. If the Commission may, consistently with 28 U.S.C. § 994(h), adopt a more tailored definition, it follows that judges, in their exercise of sentencing discretion, may do the same. And it follows further that, at least in theory, failure to do so, in an egregious case, could be deemed substantively unreasonable.

Both before and after *Booker* courts in this and other circuits have refused to follow the career offender guideline when it appeared to ensnare defendants undeserving of such harsh punishment. For example, in *United States v. Bowser*, 941 F.2d 1019 (10th Cir.1991), the defendant was convicted for the sale of 9.3 grams of crack cocaine. *Id.* at 1021. Six years prior to that incident, when the defendant was twenty years old, he had engaged in conspiracy to commit armed robbery, aggravated robbery, and kidnaping; while pending trial on those offenses he committed a separate aggravated robbery. *Id.* at 1022. The defendant pled guilty to all charges and was sentenced concurrently for all offenses. *Id.* at 1022–23. Upon sentencing for the drug crime, the federal

district court departed from the sentence mandated by § 4B1.1, finding that the prior offenses "(a) were committed when he was merely twenty years old, (b) were committed within two months of each other, and (c) were punished by concurrent sentences in the Kansas courts." *Id.* at 1024. In upholding this departure, we held that the "unique combination of factors in defendant's criminal history *was not considered sufficiently by the Sentencing Commission* to justify rigid application of the career offender criminal history categorization." *Id.* at 1025 (emphasis added). As with the defendant in *Bowser,* two of Ms. Pruitt's prior drug crimes were committed close in time and were sentenced concurrently by the state court. And while Ms. Pruitt was a bit older than Mr. Bowser when she committed her earlier offenses (23 and 28, respectively), her prior crimes were far less serious than his and did not involve violence.

Similarly, in *United States v. Collins,* the district court departed from the career offender guideline where the 64–year–old defendant pled guilty to distributing 279.7 grams of cocaine and had prior convictions for (1) possession of marijuana with intent to distribute, and (2) conspiracy to sell and transport cocaine. 122 F.3d 1297, 1299–1301 (10th Cir.1997). The defendant also had other prior convictions for possession of an illegal still, possession of marijuana, and assault and battery. *Id.* at 1300 n. 1. In affirming the departure, we stated:

> The automatic placement of a career offender in criminal history category VI under U.S.S.G. § 4B1.1 reflects the Commission's assessment that the offender possesses the most serious criminal history and the highest possible likelihood of recidivism. Thus, for a defendant who technically qualifies as a career offender but whose criminal history and likelihood of recidivism significantly differ from the heartland of career offenders, the sentencing court

may consider a departure from the career offender category.

*Id.* at 1304. Like the defendant in *Collins,* Ms. Pruitt is a serial petty drug offender. Because she is a repeat offender, she deserves an increased sentence. But it is hard to justify sentencing her as if she were one of the most serious offenders in the criminal justice system.

Looking outside this Circuit, the case of *United States v. Reyes,* 8 F.3d 1379 (9th Cir.1993), is instructive. In *Reyes,* the defendant's instant offenses included distribution of .14 grams of cocaine and about five grams of marijuana, and illegal reentry into the United States. *Id.* at 1381. He also had an extensive record of prior convictions for use of opiates, possession of marijuana with intent to distribute, attempted theft, obstructing a police officer, possession of cocaine and heroin, and possession and delivery of cocaine. *Id.* Under the career offender provision, the defendant would have qualified for a sentencing range of 210 to 262 months. *Id.* at 1382. The district court, noting that the defendant's offenses were minor compared to others sentenced under the same guideline, departed downward and sentenced him to 33 months. *Id.* The Ninth Circuit affirmed, explaining that § 4B1.1 allows for "exceptional discrepancies" that may be sufficient to justify departure. *Id.* at 1387.

Post-*Booker,* the Eleventh Circuit has upheld a downward variance where the defendant's instant offense involved distribution of five grams of crack cocaine and his prior convictions were for possession of cocaine with intent to deliver and carrying a concealed firearm. *United States v. Williams,* 435 F.3d 1350, 1352 (11th Cir. 2006). The district court concluded that application of the career offender provision would "not promote respect for the law and [was] way out of proportion to the seriousness of the offense and to [the de-

fendant's] criminal prior conduct." *Id.* at 1352–53. *See also United States v. Fernandez,* 436 F.Supp.2d 983, 984 (E.D.Wis. 2006) ("Because this case presented an example of how the career offender guideline can conflict with the purposes of sentencing under 18 U.S.C. § 3553(a), I . . . imposed a non-guideline sentence that better served those purposes."); *United States v. Qualls,* 373 F.Supp.2d 873, 877 (E.D.Wis.2005) (concluding that a career offender sentence for a cocaine dealer with a long criminal history, which was "nearly 10 times higher than any previous, unrelated sentence, and nearly twice the applicable range, was greater than necessary," and thus imposing a below-Guidelines sentence); *United States v. Phelps,* 366 F. Supp.2d 580, 590 (E.D.Tenn.2005) ("[I]t is not unusual that the technical definitions of 'crime of violence' and 'controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary increases in their advisory Guidelines ranges. In some of these cases, the Court believes a non-Guidelines sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of sentencing set out in § 3553(a)(2)."); *United States v. Carvajal,* No. 04–CR–222, 2005 WL 476125, at *5–6 (S.D.N.Y. Feb. 22, 2005) (departing from career offender range of 210 to 262 months and imposing a sentence of 168 months because the higher range was "excessive, in light of [defendant's] recidivism, for the Guidelines Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria").

The career offender guideline is an especially appropriate context for the exercise of *Booker* discretion because any variance would be based on the particular circumstances of the offender and the offense rather than a blunderbuss attack on the sentencing policy reflected in the Guidelines. A judgment that a defendant like Bowser, Collins, Reyes, Williams—or possibly Pruitt—does not warrant the extraordinary sentence that would be meted out under § 4B1.1 is not a critique of the guideline. It is a determination that these individuals, despite meeting the formal criteria for career offenders, fall outside the guideline's heartland or intended scope. *See* U.S.S.G. ch. 1, pt. A, intro. comment 4(b) ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."). By contrast, when a district court declines to follow the 100:1 crack/powder cocaine disparity, or refuses to enhance a sentence on the basis of uncharged or acquitted relevant conduct— decisions that the Courts of Appeals have almost uniformly ruled out of bounds under *Booker*[1]—the sentencing judge is ef-

---

1. On the crack/powder issue, *compare United States v. Pho,* 433 F.3d 53, 62–65, 54 (1st Cir.2006) (concluding that a district court cannot categorically reject the 100:1 crack/powder disparity), *and United States v. Castillo,* 460 F.3d 337, 361 (2d Cir.2006) (same), *and United States v. Eura,* 440 F.3d 625, 633 (4th Cir.2006) (same), *and United States v. Leatch,* 482 F.3d 790, 791–92 (5th Cir.2007) (same), *and United States v. Jointer,* 457 F.3d 682, 687–88 (7th Cir.2006) (same), *and United States v. Spears,* 469 F.3d 1166, 1175–76 (8th Cir.2006) (same), *and United States v. Williams,* 456 F.3d 1353, 1367 (11th Cir.2006) (same), *with United States v. Gunter,* 462 F.3d 237, 249 (3d Cir.2006) (concluding that district courts have discretion to consider the crack/powder disparity as a factor in sentencing), *and United States v. Pickett,* 475 F.3d 1347, 1354 (D.C.Cir.2007) (finding error in the district court's refusal to evaluate whether sentencing in accordance with the crack/powder disparity effectuates § 3553(a)). On the refusal to account for uncharged or acquitted relevant conduct, *see United States v. Rico,* 182 Fed.Appx. 722, 723 (9th Cir.2006) (unpublished); *United States v. Pineiro,* 470 F.3d

fectively saying that the guideline in question is wrong everywhere and always.[2]

We might draw an analogy to the distinction between "facial" and "as-applied" constitutional challenges to legislation. A facial challenge is a head-on attack on the legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications. An as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case. One plausible way to understand the reach of the sentencing court's post-*Booker* discretion is to treat it as analogous to an as-applied challenge: although a particular guideline may well point to an appropriate sentence in many cases, the particular characteristics of the offender and the offense in a given case render it inappropriate.[3]

This conception respects the comparative advantages of the sentencing court and the Sentencing Commission. The for-

mer is in the best position to evaluate the defendant and make an informed judgment about the necessary extent of punishment under the circumstances. *See Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The latter is in the best position to set national sentencing policy—not just because the Commission can base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise, but, more importantly, because it has democratic legitimacy. *See United States v. Cage*, 451 F.3d 585, 593 (10th Cir.2006) ("[T]he Guidelines are an expression of popular political will about sentencing that is entitled to due consideration when we determine reasonableness."). Congress has vested the Commission—not individual judges—with authority to engage in the quasi-legislative activity of determining national sentencing policy, and the Commission (for better or worse) is responsive to Congress in the way it performs these duties.[4] When courts exercise their *Book-*

200, 206–07 (5th Cir.2006); *United States v. Ashworth*, 139 Fed.Appx. 525, 527 (4th Cir. 2005) (unpublished). *But see United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir.2006) (Barkett, J., specially concurring) ("I strongly believe ... that sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment."); *United States v. Pimental*, 367 F.Supp.2d 143, 149–55 (D.Mass.2005) (declining to enhance a sentence on the basis of acquitted conduct).

**2.** I do not choose these examples because of any personal agreement with the sentencing policies involved. Quite the contrary, these are examples of Guidelines policies that are problematic (and, in the case of the 100:1 crack/powder distinction, virtually indefensible). The reason that appellate courts have tended to reverse exercises of *Booker* discretion in these contexts is not that the district courts have somehow been unreasonable in thinking that these policies are misguided, but that, as a structural matter, these are policy questions whose resolution Congress entrust-

ed to the Commission. *See Pho*, 433 F.3d at 62–63.

**3.** The Supreme Court has heard argument in a case that could alter the structure of federal sentencing, and in particular could reduce the legal significance of the Sentencing Guidelines to but one of many sentencing factors a district court must consider under 18 U.S.C. § 3553(a). *See United States v. Rita*, 177 Fed. Appx. 357 (4th Cir.2006) (unpublished), *cert. granted*, —— U.S. ——, 127 S.Ct. 551, 166 L.Ed.2d 406 (2006). The outcome of this case could render the analysis in text regarding the nature of sentencing courts' *Booker* discretion obsolete.

**4.** One might well think that this arrangement subverts the separation-of-powers protections of the Constitution, by enabling Congress to accomplish its purposes through low-level and nontransparent means, and without the alternative safeguards entailed by delegation of rulemaking authority to executive branch agencies. But these objections were rejected by the Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102

*er* discretion on an "as-applied" basis, they act in their own area of comparative advantage and respect that of the Commission.

It follows that district courts should not be overly shy about concluding that particular defendants, even if third-time drug sellers, do not have the profile Congress and the Commission had in mind when they directed that sentences for career drug offenders be set at or near the top of the statutory range. *Booker* discretion is at its zenith when sentencing courts make the judgment that the particular conduct of the defendant falls only marginally within the scope of a guideline that even the Commission regards as overbroad and (in some applications) counter-productive. *See* pages 1167–68 above. *Cf. United States v. Hernandez–Castillo*, 449 F.3d 1127, 1132 (10th Cir.2006) (noting the propriety of a downward variance in the context of the overbroad "crime of violence" definition of U.S.S.G. § 2L1.2(b)(1)(A)(ii)); *United States v. Trujillo–Terrazas*, 405 F.3d 814, 817, 819–20 (10th Cir.2005) (noting the propriety of a downward variance where a defendant's prior "arson" conviction—the circumstances of which were "innocuous"—technically qualified for an enhancement under U.S.S.G. § 2L1.2(a)(1)(A)(ii)). Even before *Booker*, this Court acknowledged that "for a defendant who technically qualifies as a career offender but whose criminal history and likelihood of recidivism significantly differ from the heartland of career offenders, the sentencing court may consider a departure from the career offender category." *Collins*, 122 F.3d at 1304. The same is even more true after *Booker*.

## II.

The majority affirms Ms. Pruitt's sentence. I cannot disagree with that as a matter of precedent. This decision joins a long parade of cases affirming within-Guidelines sentences—however "harsh" (the majority's own word)—under the "reasonableness" standard of appellate review created by the Supreme Court in its effort to bring the U.S. Sentencing Guidelines into conformity with its interpretation of the Sixth Amendment. *See United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). More than two years have passed since *Booker*. Out of the thousands of within-Guidelines sentences reviewed during that time by the twelve Circuit Courts of Appeals, only *one* has been declared substantively unreasonable—and on remand in that case the defendant received exactly the same sentence, a judgment that the Eighth Circuit recently affirmed. *See United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir.2006); *United States v. Goodwin*, 486 F.3d 449, 450–51 (8th Cir.2007).

But this Court—in company with several other Circuits—has held that within-Guidelines sentences are only presumptively reasonable. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir.2006) (announcing that within-Guidelines sentences are "entitled to a rebuttable presumption of reasonableness ... that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)"); *see also United States v. Green*, 436 F.3d 449, 457 (4th Cir.2006); *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir.2006); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir.2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir.2005); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005); *United States v. Dorcely*, 454 F.3d 366, 376 (D.C.Cir.2006).[5] This means that,

L.Ed.2d 714 (1989), a decision the Court does not seem inclined to revisit.

5. It is not evident that in practice, appellate review in circuits that have declined to recognize a presumption is any different.

at least in theory, some such sentences cannot pass the "reasonableness" standard, which in turn means that public defenders, other defense counsel, U.S. Attorneys' offices, and appellate courts devote vast quantities of resources to reviewing thousands of sentences without much likelihood of reversal. The process reminds me of the "snipe hunts" of my boyhood years in the Scouts, where the older boys would take the younger ones out in the woods at night in search for creatures that turned out not to exist. Great fun, for Boy Scouts. So far, in the post-*Booker* forest, only one apparent snipe has been found, and it turned out, on remand, not to be a snipe after all.

So when I come across a sentence like this—in which a nonviolent, relatively minor drug dealer receives a twenty-four year sentence that will consume the better portion of the remainder of her natural life—I ask: is this the case? If this within-Guidelines sentence is reasonable, does an unreasonable within-Guidelines sentence exist?

The majority seems to share these misgivings. Although it upholds Ms. Pruitt's sentence, the majority declares it to be only "marginally" reasonable and notes that it "might represent the outer-boundary of what would be reasonable in this case, despite the fact that 292 months' imprisonment represents the bottom of the applicable range under the career-offender provision." Maj. Op. 1163, 1165. This formulation suggests that if Ms. Pruitt had received a higher sentence—but one still within her advisory Guidelines range—the majority might have deemed it unreasonable, despite the presumption. But all of the arguments the majority advances in favor of Ms. Pruitt's actual 292–month sentence would apply with the same force to 293 months, 295 months, or even 360 months. What could Ms. Pruitt say about a 293–month sentence that she has not

said about a 292–month sentence? Could she argue that the career offender provision is over-inclusive and sometimes fails to effectuate the § 3553 factors? She has argued that, and the majority responds that the district court's analysis of these factors was cogent enough to pass muster. *Id.* at 1164. Could she argue that the sentence creates an unwarranted sentencing disparity by showing that similarly-situated defendants have received downward departures? She offers several examples, and the majority distinguishes all of the cases she cites and notes that "federal policy favors harsh sentencing for drug offenses." *Id.* at 1165. Could she argue that the circumstances of her past crimes—relatively minor drugs quantities, convictions close in time, and no history of violence—make such a sentence greater than necessary to comply with the § 3553 factors? She has argued that, and the majority admits that she "rightly identifies" these as important considerations, but concludes that these factors "ultimately do not minimize the seriousness of her lawlessness." *Id.* at 1163.

I would guess that much the same arguments can be made in any case. This makes me suspect that the real holding of this case—and of dozens like it—is that a substantively unreasonable within-Guidelines sentence does not exist. This raises the question of what we all are doing, and why.

### III.

The sole purpose of appellate review under the pre-*Booker* system, as Justice Scalia has pointed out, was to preserve conformity with the Guidelines. *Booker*, 543 U.S. at 306, 125 S.Ct. 738 (Scalia, J., dissenting). Appellate review of non-Guidelines sentences after *Booker* appears to serve a similar function-although now the goal is reasonableness rather than

strict conformity. We ensure that district courts do not vary from the Guidelines without good reason, or to an excessive degree. *See, e.g., United States v. Atencio,* 476 F.3d 1099, 1106–07 (10th Cir.2007); *Cage,* 451 F.3d at 593–96; *United States v. Wittig,* 206 Fed.Appx.763, 770–71 (10th Cir.2006) (unpublished). But what is the purpose of appellate review of within-Guidelines sentences?

It cannot be to ensure that the sentence is properly calibrated to the particular circumstances of the offender and the offense. District judges, who interact with the defendant and hear the evidence in the case, are far better situated than appellate judges to make these judgments. *See Koon,* 518 U.S. at 92, 113, 116 S.Ct. 2035; *see also United States v. Mateo,* 471 F.3d 1162, 1172–73 (10th Cir.2006) (Murphy, J., concurring) (noting the district court's "clear institutional advantage when it comes to discerning which defendants are in need of harsh punishment and which are in need of leniency").

Nor can the purpose be to ensure that the Guidelines themselves reflect good sentencing policy. The Sentencing Commission has been entrusted by Congress with that quasi-legislative responsibility. To be sure, most appellate judges, myself included, strongly believe that some provisions of the Guidelines are misguided. There is something close to universal agreement that the 100:1 crack/powder cocaine ratio is unjust, and a great many judges believe the career offender and crime of violence guidelines are overbroad. Some of us worry that measuring the seriousness of prior offenses by the punishment authorized for the crime rather than by the defendant's actual sentence is insufficiently discriminating and has a draconian effect. Many judges believe the entire scale of punishments is pitched too high. But it would be hard to read *Booker*'s "reasonableness" standard as an invitation to Courts of Appeals to second-guess the Commission at the policy level regarding these points. We may not agree with all the Commission's choices, but no one familiar with the Commission's process could think its decisions fail the test of reason. Moreover, many of the more controversial provisions of the Guidelines—including the career offender guideline at issue in this case—originate in congressional action, which (within constitutional limits) carries democratic authority that judges are not entitled to disregard. If appellate courts were to become more aggressive in reviewing within-Guidelines sentences, they would in effect supplant the national Guidelines with regional sets of common law sentencing principles. This would surely undermine the uniformity of the system, and it is doubtful that it would improve the overall quality of justice in our courts.

So, it may be a good thing that appellate courts have almost universally deferred to district courts with respect to within-Guidelines sentences. If the Sentencing Guidelines represent sound—albeit not perfect—public policy, as Congress evidently believes, and if the remedial opinion in *Booker* solves the Sixth Amendment problems, as a majority of the Supreme Court evidently believes (assuming that there were any such Sixth Amendment problems, as a different majority of the Court believes), then maybe we should all take satisfaction in the fact that the Courts of Appeals have not mucked things up by holding procedurally-correct Guidelines sentences "unreasonable." After all, prior to *Booker,* a district court's decision not to depart from the Guidelines was not even appealable. *United States v. Chavez–Diaz,* 444 F.3d 1223, 1228 (10th Cir.2006). It is hard to understand why, if the Sixth Amendment problems with the prior system were somehow solved by giving district judges greater sentencing discretion,

a district court's exercise of that enhanced discretion to sentence within the Guidelines should be reviewed more stringently on appeal than it was before. When the Sentencing Commission has determined a particular range to be the national norm and the district judge, who is most familiar with the circumstances of the defendant and the crime, determines that a within-Guidelines sentence is reasonable in light of the § 3553(a) factors, how could an appellate court presume to hold the resulting sentence unreasonable?

When evaluating non-Guidelines sentences, appellate courts have a benchmark—the Guidelines—and are able to determine whether the reasons for sentencing outside the Guidelines, and the extent of the variance, are sensible in light of the particular facts of the case. When evaluating within-Guidelines sentences, appellate courts have no such benchmark. The touchstone of reasonableness is the sentencing factors of § 3553(a), but those factors were not designed as an appellate standard of review and, in reality, provide no practical guidance. The § 3553(a) factors tell judges, like Goldilocks, not to sentence too high and not to sentence too low. As the majority opinion in this case demonstrates, it is hard to imagine a sentence that cannot be rationalized in terms of these factors.

These observations about appellate review of within-Guidelines sentences are entirely independent of the separate question—now before the Supreme Court in *Rita*, 177 Fed.Appx. 357, *cert. granted*, —— U.S. ——, 127 S.Ct. 551, 166 L.Ed.2d 406—of how much weight district judges should accord the Guidelines. If the Guidelines calculation becomes only one factor among many and is no longer entitled to any presumptive weight, then district courts will have greater latitude to sentence outside the Guidelines. But why should this diminish their discretion to

sentence within the Guidelines, if that is what they determine is most appropriate in the particular case? There are arguments going both ways regarding the conflicting values of individuated decision-making and national uniformity; there are arguments both ways regarding the meaning of the sentencing statute as severed and rewritten by the Court in *Booker*; there are arguments both ways about the logical connection between the Sixth Amendment's guarantee of jury trial and the distinction between mandatory and advisory guidelines. But none of these arguments supports the proposition that appellate courts should be given a more aggressive role in second-guessing the combined judgment of the district court and the Sentencing Commission. When the district court, in its discretion, determines that the Guidelines range established by the Commission is appropriate in the particular case, it is entirely sensible, in light of institutional capabilities, for the Court of Appeals to presume that decision reasonable.

It follows that district judges must not assume that the presumption of reasonableness accorded within-Guidelines sentences on appeal is equivalent to a presumption of unreasonableness for variances. *See United States v. Begay*, 470 F.3d 964, 975–76 (10th Cir.2006). This case, for example, would have been an ideal candidate for a variance, or even for a departure. Many courts, both before and after *Booker*, have departed or varied from § 4B1.1 in the case of defendants seemingly far more dangerous than Ms. Pruitt. Moreover, it is to be hoped that the Sentencing Commission will take note of the excesses produced by this guideline, and make appropriate revision. But to say that district courts should exercise discretion based on the circumstances of the offender, or that the Commission should take a second

look at a problematic guideline from the perspective of national sentencing policy, is not to say that appellate courts, which have neither the district court's familiarity with individual circumstances nor the Commission's expertise and democratic warrant to set policy, should declare a sentence like Ms. Pruitt's unreasonable.

### IV.

I therefore concur in the judgment of the Court, although Ms. Pruitt's sentence strikes me, from my limited vantage point as an appellate judge, as wildly excessive.